UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEXANDER SHEPPARD,<br>Defendant. | Criminal Action No. 21-203 (JDB) |

### ORDER

Before the Court are motions in limine filed by the United States and defendant Alexander Sheppard. Sheppard is charged with six counts related to his activity at the U.S. Capitol on January 6, 2021, and his trial is set to begin on January 20, 2023.

I. **Sheppard's Motions in Limine**

A. **Motion to Exclude the Government's Montage Video**

Sheppard first requests that the Court prohibit the government from "introducing a 22 minute video montage capturing surveillance of thousands of other individuals on the Capitol Grounds and inside the Capitol building on January 6, 2021." Defense Mot. in Lim. to Preclude Certain Evid. at Trial [ECF No. 59] ("Sheppard Mot.") at 2. This montage video is a "comprehensive exhibit covering the events of the day," which has been introduced in numerous January 6 trials and which the government intends to introduce at Sheppard's trial. United States' Opp'n to Sheppard's Mot. [ECF No. 64] ("Gov't Opp'n") at 5. Sheppard argues that the vast majority of the video—beyond the three seconds during which Sheppard himself is in the frame— is irrelevant, is unfairly prejudicial, and will mislead and confuse the jury. Sheppard Mot. at 4–7. Thus, he argues, the video should be excluded. Id. The government counters that "evidence of the broader context of the events of the day is both relevant to, and probative of, the alleged offenses." Gov't Opp'n at 5.

1

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As used in Rule 403, "the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." United States v. Ring, 706 F.3d 460, 472 (D.C. Cir. 2013) (cleaned up) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)).

On the afternoon of January 6, 2021, a large crowd gathered outside the Capitol. Gov't Opp'n at 2. Law enforcement was present and attempted to keep the crowd outside of the restricted building and grounds. Id. But "[d]espite those efforts to maintain order and keep the crowd from entering the Capitol, individuals in the crowd forced entry into the U.S. Capitol around 2:00 p.m., including by breaking windows and by assaulting members of the U.S. Capitol Police. Other members of the crowd encouraged and assisted those acts." Id. Once the crowd entered the Capitol, "with multiple police lines overrun and the several entrances to the Capitol breached, the Senate recessed for its own safety; the House shortly followed." United States v. Rivera, Crim. A. No. 21-060 (CKK), 2022 WL 2187851, at *2 (D.D.C. June 17, 2022).

Thus, it was the crowd—of which Sheppard was part—that caused the harm and destruction on January 6. Given that context, the montage video showing the actions of the crowd and the pressures facing law enforcement is certainly relevant. That is so even though Sheppard will of course be judged based on his personal conduct in that context.

First, as a general matter, the video contextualizes the actions of demonstrators and law enforcement—which are relevant to, among other things, Sheppard's mens rea. See Mem. &

2

Order at 2–3, United States v. Gillespie, No. 22-60 (BAH) (D.D.C. Nov. 30, 2022), ECF No. 43 ("Gillespie Order"); Gov't Opp'n at 8.  Sheppard was aware that he was part of a massive crowd, see, e.g., Gov't Opp'n at 6, and even though he only appears in seconds of the montage video, he certainly was aware of the chaos and observed many of the events the video depicts.  His awareness of the pressures facing law enforcement and the sheer force of his fellow demonstrators is relevant to the charges against him.  See Tr. of Sentencing at 25:12–14, United States v. Mazzocco, No. 21-54 (TSC) (D.D.C. Oct. 4, 2021), ECF No. 32 ("A mob isn't a mob without the numbers.  The people who were committing those violent acts did so because they had the safety of numbers . . . .").  Accordingly, the government cannot fully explain the actions of Sheppard and those around him without showing the jury the context of the day.

   Second, a number of the charges Sheppard faces require the government to prove disruption or obstruction on Sheppard's part.  See, e.g., Indictment [ECF No. 8] at 1 (charging Sheppard with violating 18 U.S.C. §§ 1512(c)(2) and 2, which require that Sheppard "corruptly . . . obstruct[ed], influenc[ed], or imped[ed] any official proceeding, or attempt[ed] to do so," or aided and abetted in such obstruction).  In some cases, proving obstruction or disruption may not require evidence of others' actions.  But given the nature of the events on January 6, "obstructing, influencing, or impeding the Electoral College vote certification, an official proceeding, involves the collective action of defendant and others similarly situated overtaking law enforcement and entering the Capitol without permission, so the crowd's conduct is relevant to the charge." Gillespie Order at 4; accord Rivera, 2022 WL 2187851, at *6 ("Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption.").  Thus, proving the actual disruption or obstruction requires an understanding of the crowd as a whole— exactly what the montage video depicts.

Further, at this point, the Court cannot conclude that any potential prejudice from the video substantially outweighs its probative value. Even if this video were excluded, the trial would inevitably feature evidence of others in the Capitol engaging in violent conduct, which could trigger an emotional response. For example, the government suggests that Sheppard "participated in overrunning the police line" and "confront[ed] the officers guarding the doors" to the Speaker's Lobby. Gov't Opp'n at 3. Video footage of those moments (which is certainly relevant and admissible) is likely to show people other than Sheppard acting violently. For all these videos—the montage video included—the defense can establish for the jury, through cross-examination or otherwise, whether Sheppard bears any responsibility for others' actions.[1] See Gillespie Order at 5 (finding that risk of unfair prejudice from evidence of other demonstrators' actions "is best mitigated through cross-examination by defendant at trial, who is free to attempt to differentiate himself from other rioters"). Given the relevance of providing the context of the events of January 6 to the jury, the Court declines to exclude the montage video under Rule 403 at this time.[2]

### B. Motion to Preclude Use of Certain Terminology

Sheppard also moves the Court to preclude the government and witnesses from referring to "Mr. Sheppard or any other individuals from that day as 'rioters,' 'insurrectionists,' 'attackers,' or any other inflammatory terms." Sheppard Mot. at 8. Sheppard argues that these words "only serve the purpose of invoking emotional responses from the jury which will lead them to judge Mr. Sheppard unfairly rather than for his specific alleged conduct" and are thus "highly prejudicial." Id.

---

[1] If either party believes a jury instruction is warranted to clarify the purposes for which the montage video (or any other video) may be considered, such instruction should be submitted to the Court in the proposed jury instructions.

[2] If there are specific frames in the video that Sheppard believes are particularly inflammatory—such as the "multiple brutal assaults, smoke, and tear gas" described in his reply, Reply [ECF No. 65] at 3—and should be specifically excluded, that issue may be raised at the pretrial conference.

The government argues that these terms "[a]ccurately [d]escribe" the events of January 6 and precluding their use would force the government to "dilute its language and step gingerly around Sheppard's crimes." Gov't Opp'n at 10–11; see also id. at 12–13 (arguing that preventing the use of the challenged terms would "muzzl[e] the government and witnesses from employing commonly used phrases." (quoting Gillespie Order at 6–7)).

Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Sanford Ltd., 878 F. Supp. 2d 137, 143 (D.D.C. 2012) (quoting Fed. R. Evid. 403 advisory committee's note). Not all language or evidence that arouses emotions is improper—the relevant question is whether such language or evidence will cause the jury to make a decision based on emotion rather than on the facts and law. As is the case with many criminal cases, much of the evidence related to the events at the Capitol on January 6 is likely to arouse emotion.

Some of the words identified by Sheppard have a higher risk of unfair prejudice than others. For example, this Court and many others have used the term "riot" to describe that day, so it would be strange to now find that "rioters" is an unfair term to use. See United States v. Brock, Civ. A. No. 21-140 (JDB), 2022 WL 3910549, at *1 (D.D.C. Aug. 31, 2022) (describing the events of January 6 as a "riot"); accord Gillespie Order at 5–6 (collecting cases using the challenged terms and noting that "the words . . . accurately describe the events that occurred on January 6, 2021"). Others, such as "insurrectionist," may be inappropriate in this case to describe Sheppard, and the government should be cautious in deciding to use such terms. But even that decision may depend on the context and evidence being presented. The government should not be required to mince its words in describing facts in its presentation of the evidence. See, e.g., United States v. Rude, 88 F.3d 1538, 1548 (9th Cir. 1996), as amended on denial of reh'g (Sept. 10, 1996) (upholding district court's admission of terms like "crooks," "evil," "con man," and "scam" as they "reasonably

5

described the practices of defendants" and there is "no rule requiring the prosecutor to use a euphemism").

Sheppard also argues that the government should be prohibited from using these terms because they are "clearly the government's opinion and the government cannot provide opinion testimony through lay witnesses or expert witnesses" because the "jury must determine the facts." Sheppard Mot. at 8–9. Although there are limitations on the admissibility of opinions on legal conclusions by both lay and expert witnesses, witnesses are not precluded from using certain words simply because they also carry some legal significance. For example, as the Alford court noted, in a bank robbery case a witness would not be prohibited from using the term "robbery" when describing the events he or she witnessed just because the word also has legal significance. Hr'g Tr. at 19:20–23, United States v. Alford, No. 21-263 (TSC) (D.D.C. Sept. 2, 2022), ECF No. 82 ("Alford Hr'g Tr."). So too here—if, say, a police officer responded to a defendant's actions because he believed the defendant to be "disorderly," the officer should be allowed to use that term in his testimony, despite the fact that it also happens to be a word used in the statute. See United States v. Hoffecker, 530 F.3d 137, 171 (3d Cir. 2008) (holding that lay witness's characterization of the fraudulent scheme as a "scam" was not an impermissible legal conclusion because it described what the witness, who observed the fraudulent scheme first-hand, perceived it to be). The Federal Rules of Evidence contemplate that witnesses may in some situations offer testimony that goes to the ultimate issue, and do not categorically bar such testimony. See Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

At this point, an order outlining precisely which terms the government may or may not use would sweep too broadly, so the Court will deny Sheppard's motion. The parties are instructed to be wary of the potentially inflammatory nature of certain terms, and are free to object to specific questions or language used during trial. See Alford Hr'g Tr. at 20:21–21:17 (taking the same

approaching and "caution[ing] the parties that they should use their judgment and make the appropriate objections and appropriate motions to strike if you believe that either side has crossed the line in that way.").

II.     **The Government's Motions in Limine**

The government filed an omnibus motion seeking a variety of pretrial rulings. Many of the motions are unopposed by Sheppard and, in some instances, address issues that have not been raised in this case.

### A. Motion to Limit Unnecessary Discussion of Security-Related Topics (Motion 1)

The government's first motion seeks to "preclude the admission of any evidence . . . regarding certain sensitive, security-related topics," specifically, "evidence or argument concerning 1) the exact locations of U.S. Capitol Police ('USCP') security cameras and 2) the protocols of the U.S. Secret Service ('USSS')." United States' Omnibus Mot. in Lim. [ECF No. 60] ("Gov't Mot.") at 1–2.

"The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses." United States v. Whitmore, 359 F.3d 609, 615–16 (D.C. Cir. 2004). As described above, to be admissible, evidence must be relevant—that is, it must have a tendency to make a fact of consequence more or less probable, Fed. R. Evid. 401—and even relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the issues, [or] misleading the jury," Fed. R. Evid. 403. A district court may also properly exclude evidence of a "highly sensitive nature," particularly when it is not within the scope of direct examination or does not "pertain to the charges in th[e] case." United States v. Balistrieri, 779 F.2d 1191, 1216–17 (7th Cir. 1985), overruled on other grounds by Fowler v. Butts, 829 F.3d 788 (7th Cir. 2016).

As to the government's first security-related topic—the specific locations or map of CCTV cameras in and around the Capitol—Sheppard represents that he "does not intend on eliciting such testimony," but he "cannot foreclose the possibility it will become relevant on cross-examination." Defense Resp. to Gov't Mot. [ECF No. 61] ("Sheppard Resp.") at 1. Given that representation, and the government's interest in the security of the Capitol, evidence of specific locations of security cameras in or around the Capitol will be presumptively inadmissible as irrelevant under Federal Rule of Evidence 401 or, alternatively, because its probative value is substantially outweighed by the risk of distracting the jury from relevant issues under Rule 403. See Min. Order, United States v. Williams, No. 21-377 (BAH) (D.D.C. June 8, 2022) (taking the same approach to a similar motion). If Sheppard seeks to overcome this presumption and present such evidence during trial, he may request permission from the Court outside the presence of the jury.

The government's second security-related topic seeks to "limit[] the cross-examination of the Secret Service witness[] [it will call at trial] to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, namely, protecting the Vice President and his family." Gov't Mot. at 5. It accordingly seeks to exclude any questioning about

> (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

Id.

Sheppard "does not anticipate questions" related to those two specific topics. Sheppard Resp. at 3. He does ask that the Court refrain from prohibiting him from questioning witnesses "about any details of the location of former Vice President Pence" on January 6. Id. at 2. Such testimony is related to a Secret Service witness's anticipated direct examination—their role

8

"protecting the Vice President and his family" on January 6—and is neither a Secret Service protocol nor a detail about the nature of the protection such as the number and type of agents assigned. Thus, the Court does not believe that granting the government's motion will preclude such questioning, and will grant the government's motion as to USSS protocols and details of the nature of protection.

### B. Motion to Preclude Sheppard from Arguing Entrapment-by-Estoppel, Public Authority, or Entrapment (Motion 2)

The government's second motion in limine requests an order preventing Sheppard from (1) presenting an entrapment-by-estoppel or public authority defense, and (2) arguing that he was "enticed or entrapped by law enforcement." Gov't Mot. at 7.

The first request was decided in the Court's December 28, 2022 Order and accompanying Memorandum Opinion, in which the Court ruled that Sheppard would be precluded from relying on an entrapment-by-estoppel or public authority defense at trial. See Dec. 28, 2022 Order [ECF No. 62]; United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *7–9 (D.D.C. Dec. 28, 2022).

In response to the second request—to preclude an argument of entrapment by law enforcement—Sheppard states that he does not intend to present such a defense.[3] Thus, the Court will grant the motion in full.

### C. Motion to Preclude Sheppard from Suggesting that His Speech or Conduct Was Protected by the First Amendment (Motion 3)

The government's next motion in limine seeks an order (1) allowing the government to use "otherwise-protected speech (such as political speech) as evidence," and (2) precluding Sheppard

---

[3] Sheppard notes that he "may potentially raise evidence regarding the actions or inactions of law enforcement personnel as such information is certainly relevant to his intent that day." Sheppard Resp. at 3. Such evidence could be relevant and could be presented (barring any other evidentiary challenge) as long as Sheppard perceived or was otherwise aware of it.

9

from suggesting "that the First Amendment permitted the Defendant to enter or 'protest' in the restricted area at the U.S. Capitol on January 6." Gov't Mot. at 19–20. In response, Sheppard argues that the Court should decline to "make a blanket ruling that any statements shall be admitted at trial without hearing the statement and considering the potential objections," and that Sheppard can argue that "his intent was to speak in accordance with his First Amendment rights" even if he cannot argue that "his statements were protected by the First Amendment." Sheppard Resp. at 4.

As to the first part of the government's motion, the government will not be barred by the First Amendment from introducing into evidence otherwise-protected speech. See Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."). However, such evidence is not necessarily admissible as a result—as Sheppard notes, there are "other reasons why [he] would object to his statements being admitted that have nothing to do with a First Amendment protection." Sheppard Resp. at 4. The Court will accordingly grant the motion only insofar as it asks the Court to affirm that the First Amendment is not a bar to admission.

The Court will also grant the government's second request. But Sheppard is not necessarily barred from mentioning the First Amendment at all. The only restriction the Court will impose at this time is that he cannot argue that the First Amendment is a defense to any of the charges against him. He appears to concede that line of argument would be impermissible. See Sheppard Resp. at 4 (noting that he "may not necessarily argue his statements were protected by the First Amendment"). The other ways Sheppard suggests the First Amendment might be relevant, see id. at 4–5, appear to be outside the scope of the government's motion and the Court will not rule on evidence's admissibility for those purposes here.

### D.  Motion to Admit Certain Statutes and Records (Motion 7)

The government requests that the Court "take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15–18 relating to the Electoral College Certification Official Proceedings," as well as admit the portions of the Congressional Record memorializing the Congressional proceedings on January 6, 2021.  Gov't Mot. at 27–28.  Sheppard does not oppose the motion, but asks that the Court make clear to the jury that "it must consider still whether or not the government has proved each element [of the crimes], including whether or not the vote count was an official proceeding."  Sheppard Resp. at 9.

Given the agreement, the Court will grant the motion, and take judicial notice of and enter into evidence the relevant documents.  Per Sheppard's request, the Court will not "suggest [to the jury] that simply admitting these items means that the 'official proceeding' element of 18 U.S.C. § 1512(c)(2) has been met," Sheppard Resp. at 9, and the jury instructions will of course reflect that the government must prove every element of every crime.

### E.  Remaining Motions (Motions 4, 5, and 6)

The government's three remaining motions in limine ask the Court to, essentially, reaffirm the rules of evidence: to admit Sheppard's out-of-court statements under Federal Rule of Evidence 801(d)(2)(A), Gov't Mot. at 25, to preclude Sheppard from using his own out-of-court statements as they would be inadmissible hearsay, id. at 25–26, and to preclude Sheppard from encouraging jury nullification, id. at 23–25.  Sheppard construes these requests as the government asking for an order "precluding [his attorney] from engaging in conduct she is not permitted to do," and notes that the defense "will abide by the rules of evidence" and other obligations.  Sheppard Resp. at 5.

The Court will deny these three motions as premature, without prejudice.  As an initial matter, some of these issues, such as jury nullification, are highly unlikely to arise.  See Sheppard

11

Case 1:21-cr-00203-JDB   Document 66   Filed 01/06/23   Page 12 of 13

Resp. at 5 ("[T]he defense has not indicated she will engage in impermissible behavior such as suggesting jury nullification."). But even for the issues that are more likely to arise, such as the use of Sheppard's out-of-court statements, there may be other reasons to exclude or allow the relevant statements notwithstanding the rules of evidence cited by the government. See, e.g., id. at 5–9 (describing how Federal Rule of Evidence 106 may permit introduction of statements otherwise barred as inadmissible hearsay). Both parties are aware of the relevant rules and if there are challenges to specific statements, they may be raised at trial. A broad ruling requiring the parties to follow the rules of evidence is unnecessary, and without the context of the trial and the statements to be introduced, it is premature to rule on any of these motions at this time.

\*     \*     \*

For the reasons set forth above, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [59] Sheppard's motion to exclude the government's montage video and to preclude use of certain terms at trial is hereby **DENIED**.

As to [60] the government's omnibus motion, it is hereby

**ORDERED** that (1) the government's motion in limine regarding evidence of specific locations of Capitol Police surveillance cameras and cross-examination of Secret Service witnesses is **GRANTED**; it is further

**ORDERED** that (2) the government's motion in limine to preclude Sheppard from arguing entrapment-by-estoppel, public authority, or entrapment, is **GRANTED**; it is further

**ORDERED** that (3) the government's motion in limine related to First Amendment speech is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that (7) the government's motion in limine to admit certain statutes and records is **GRANTED**; and it is further

**ORDERED** that (4) the government's motions to preclude Sheppard from encouraging jury nullification, (5) admit Sheppard's out-of-court statements, and (6) preclude Sheppard from using his own out-of-court statements, are **DENIED** without prejudice.

/s/
JOHN D. BATES
United States District Judge

Dated: January 6, 2023