UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-203 (JDB) |
| v. : | |
| : | |
| ALEXANDER SHEPPARD, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL**

Pursuant to the Court's minute orders dated April 28-May 2, 2023, the United States of America respectfully submits this supplemental response to the defendant's motion for leave to file a motion for a new trial and reply. Dkt. 100 and 102. For the reasons below, the government reiterates its opposition to the defendant's motion for leave to file a motion for a new trial in light of the D.C. Circuit's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), as defendant's still-unfiled motion for a new trial is both untimely and lacking in merit. In October 2022, the defendant filed a motion to dismiss that relied on arguments at issue in *Fischer*, sharply undermining his contention that the relevance of that opinion could not reasonably have been ascertained in a timely fashion. Moreover, the *Fischer* opinion did not address the definition of "corruptly" and Judge Walker's concurring opinion is in any event not controlling, and thus Sheppard's labored reliance on that opinion to excuse his untimeliness fails. Finally, the defendant's suggestion that he is entitled to an indefinite delay of sentencing while *Fischer* and *Robertson* make their way through appellate review is without merit. Sheppard, like any defendant convicted of 18 U.S.C. § 1512(c)(2) at trial, may choose to seek his own appellate review, but, as this Court has indicated, *Fischer* is binding precedent and does not support indefinite delay of sentencing.

## I. The Court Should Deny Sheppard's Motion for a New Trial As Untimely.

The defendant's motion for leave to file a motion for a new trial should be denied because his motion for a new trial is untimely. The defendant was scheduled for sentencing on April 27, 2023. One day prior to sentencing, the defendant filed his motion for leave to file a motion for a new trial. The defendant did not file his motion for a new trial at that time. At the hearing held on April 27, 2023, the Court inquired on the record as to the defendant's failure to file his motion for a new trial along with his motion for leave to file that motion. To date, however, the defendant has declined the Court's invitation and has still not filed his motion for a new trial. Rule 33 requires "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). As of the date of the filing of this supplement, defendant's motion for a new trial is 106 days overdue. "Neither the rule nor case law provide for any exceptions to this time bar. *See generally* Fed. R. Crim. P. 33; *cf. Eberhart v. United States*, 546 U.S. 12, 19 (2005) (characterizing Rule 33 time limitations as 'claim-processing rules' that 'assure relief to a party properly raising them, but do not compel the same result if the party forfeits them.')." *United States v. Marlow*, No. CR 10-0051-4 (PLF), 2021 WL 2865951, at *8 (D.D.C. July 8, 2021); *see also United States v. Bagcho*, 227 F. Supp. 3d 28, 33 (D.D.C. 2017) ("Although the time limitations in Rule 33 are not jurisdictional, they are inflexible claim-processing rules. This means that they 'assure relief to a party properly raising them.'") (internal citations omitted).

Defendant, in his reply filed on April 27 and during the hearing before this Court, insists that the Court should overlook the untimeliness of his as-yet unfiled motion for a new trial pursuant to Federal Rule of Criminal Procedure 45(b). That rule distinguishes between applications to

2

extend time that occur before or after the deadline in question. Rule 45(b)(1) provides that:

> When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
>
> (A) before the originally prescribed or previously extended time expires; or
>
> (B) after the time expires if the party failed to act because of excusable neglect.

*Id.* Here, the defendant's motion seeks an extension of time for a deadline that has already passed. Accordingly, Rule 45(b)(1)(B) applies, and Sheppard's motion meets its burden if and only if it can demonstrate both "good cause" and "excusable neglect." "Good cause refers to a party's diligence in trying to comply with a deadline, while excusable neglect focuses on the equities underlying whether to excuse a parties' noncompliance." *United States v. Bloom*, No. 8:21-CR-211, 2023 WL 2617349, at *1 (D. Neb. Mar. 23, 2023). Sheppard's motion fails both standards.

> **A.    Sheppard Has Not Demonstrated "Good Cause" for His Failure to Timely File His Motion for a New Trial.**

"Generally, a party can demonstrate 'good cause' only if they can show some reason why they could not have challenged the defect in the time required[]." *United States v. Griffith*, No. CR 21-244-2 (CKK), 2023 WL 3275619, at *2 (D.D.C. May 5, 2023). The two standards, "although interrelated, are not identical and [] 'good cause' requires a greater showing than 'excusable neglect.'" *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996). Indeed, "inadvertence or negligence alone does not constitute 'good cause' for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice." *Id.* at 176. Rather,

> [G]ood cause . . . would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually

>does not suffice, and some showing of 'good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

*Id*. at 175. Sheppard, in both his motion and his reply, fails to directly address the question of "good cause," but appears to argue that he failed to appreciate the relevance of the D.C. Circuit's decision in *Fischer* to his case and points to the length of the opinion to excuse his untimeliness. That is insufficient to carry his burden of demonstrating good cause. Moreover, over six months ago, the defendant relied on many of the same arguments addressed in *Fischer* in support of his motion to dismiss Count One of the Indictment. Dkt. 37 [Defendant's Motion to Dismiss Counts One, Two Three, and Six of the Indictment, October 21, 2022] at 18-21. Defendant's documented awareness of and reliance on those arguments then cannot be easily squared with his claim now that he only belatedly considered the relevance and impact of the *Fischer* decision to his case. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *United States v. Jones*, No. CR 14-0769 JB, 2016 WL 5395277, at *3 (D.N.M. Sept. 15, 2016) (citing *Advanced Optics Elecs., Inc. v. Robins*, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010) (Browning, J.)). The D.C. Circuit decided *Fischer* over a month ago, and the defendant still has not explained—let alone demonstrated—a reasonable basis for his ongoing failure to file his motion for a new trial.

    **B.**  **Sheppard Has Failed To Demonstrate "Excusable Neglect."**

    Likewise, Sheppard has failed to demonstrate that his failure to file a timely motion resulted from excusable neglect. The test for what constitutes excusable neglect is an equitable one which takes into consideration all relevant circumstances surrounding a party's omission. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993); *see also Stutson*

*v. United States*, 516 U.S. 193, 196-98 (1996) (holding that the same analysis of excusable neglect stated in *Pioneer* applies in criminal cases). In particular,

> To determine whether the district court permissibly exercised its discretion to find counsel's neglect inexcusable, we consider four factors set forth by the Supreme Court in *Pioneer*: (1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith. *See* 507 U.S. at 395; *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (applying the four *Pioneer* factors).

*Cohen v. Board of Trustees of the University of the District of Columbia*, 819 F.3d 476, 479 (D.C. Cir. 2016). Here, the weight of those equitable factors militate strongly against the defendant and, taken together, do not demonstrate excusable neglect.

In his reply, defendant addresses only two such factors in support of his claim that the delay resulted from excusable neglect: that he could not control the timing of the *Fischer* opinion and that his counsel acted in good faith. The government does not dispute either of those factors, but under the *Pioneer* analysis, the most important factor is the *reason* for the delay – and Sheppard's reason for delay fails to justify any delay at all. Not every decision by the Court of Appeals provides a cognizable basis for an untimely filing in every case pending in the district court. Here, Sheppard insists that the *Fischer* opinion, and Judge Walker's concurrence in particular, defined the term "corruptly" and thus offers a reason sufficient to excuse the untimeliness of his motion. As set forth in greater detail below, he is mistaken: the Fischer opinion did not define the term "corruptly" and Judge Walker's concurring opinion is not controlling. Accordingly, the timing of the *Fischer* opinion cannot provide a reason that justifies the untimely filing of his motion for a new trial.

Likewise, the length of delay and the impact on judicial proceedings significantly weigh

5

against finding excusable neglect here. Sheppard seeks what amounts to an indefinite pause in his case as the *Fischer* and *Robertson* cases slowly make their way through multiple levels of appellate review. Moreover, allowing Sheppard to pause his case would affect every other defendant charged with or convicted of obstruction of an official proceeding in violation of 18 U.S.C. § 1512, and impact judicial proceedings in each of those cases pending final resolution of *Fischer* and *Robertson*.

## II. The Court Should Not Give Sheppard Extra Time to File a Meritless New Trial Motion.

The Court should also deny Sheppard's motion for leave to file an untimely motion for a new trial because there is no merit to the argument he proposes to raise. *See, e.g.*, *United States v. Ryans*, 709 F. App'x 611, 617 (11th Cir. 2017) ("defendant Ryans suffered no prejudice from the denial of his motions for extension of time or his untimely post-trial motion for judgment of acquittal, which, even if timely, would fail on the merits"); *United States v. Hoover-Hankerson*, 406 F. Supp. 2d 76, 90 (D.D.C. 2005) ("Even if the motions had been timely, defendants' grounds for a new trial appear meritless.").

According to Sheppard, he is entitled to a new trial because the D.C. Circuit in *Fischer* "defined the element 'corruptly' in 18 U.S.C. § 1512(c)(2) in a manner that was inconsistent with the jury instruction given in Mr. Sheppard's trial" and was instead "precisely" the instruction he requested. Dkt. 100 at 1.[1] Sheppard invokes "the meritorious nature of such a motion" when

---

[1] Although it is immaterial to the merits of Sheppard's *Fischer*-based argument, it is not the case that Sheppard's requested instruction was "precisely" the one suggested by Judge Walker in his concurrence in *Fischer*. Under Judge Walker's proposed definition, "'corruptly'" in § 1512(c) means to act "with an intent to procure an unlawful benefit either for [oneself] or for some other person." *Fischer*, 64 F.4th at 357 (Walker, J., concurring). Sheppard's proposed instruction replaced "other person" with "an association" Dkt. 100 at 1. This is a significant difference in the

requesting leave to file an untimely new trial motion. Dkt. 102 at 3. In the alternative, he suggests that the Court should postpone sentencing in this case pending the outcome of a different D.C. Circuit case, *United States v. Robertson*, No. 22-3062. These arguments are meritless. Indeed, the government is not aware of any court that has found Judge Walker's concurrence to be controlling regarding the definition of "corruptly" in § 1512(c)(2) in the five weeks since *Fischer* was decided.

### A.     The D.C. Circuit Did Not Define the Term "Corruptly" in *Fischer*.

In *Fischer*, the D.C. Circuit did not define the meaning of the term "corruptly" as it is used in § 1512(c)(2). Rather, in the portions of the lead opinion joined in full by the concurring judge, the court relied on § 1512(c)(2)'s text and structure, as well as case law interpreting the statute, *see Fischer*, 64 F.4th at 335-39, to conclude that § 1512(c)(2)'s *actus reus* element "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335; *see id.* at 351 (Walker, J., concurring) (noting that he "concur[s] in the Court's Judgment and join[s] the lead opinion's interpretation of [§ 1512](c)(2)'s act element"). In a section of the lead opinion that Judge Walker did not join, Judge Pan reasoned that "[t]he requirement of 'corrupt' intent prevents § 1512(c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction," but refrained from defining "the exact contours of 'corrupt' intent" because "the task of defining 'corruptly'" was not before the Court. *Id.* at 340 (opinion of Pan, J.). Judge Walker, believing that defining "corruptly" was necessary to "make sense" of "[§ 1512](c)(2)'s act element," wrote a concurring opinion in which he proposed defining the term to mean "act[ing] with an intent to procure an unlawful benefit either for oneself

---

circumstances of January 6. *See Fischer*, 64 F.4th at 361 (Walker, J., concurring) ("it might be enough for the Government to prove that a defendant used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump).").

or for some other person." *Id.* at 352 (Walker, J., concurring) (citation omitted). The dissenting opinion (Katsas, J.) did not endorse any definition of the statute's *mens rea* element and instead would have interpreted § 1512(c)(2)'s *actus reus* element to encompass only "acts that impair the integrity or availability of evidence." *Id.* at 370 (Katsas, J., dissenting).

As explained in both the lead and dissenting opinions in *Fischer*, the definition of "corruptly" was not squarely presented in that case and therefore was not resolved. *See id.* at 340-41 (opinion of Pan, J.) ("expressing [no] preference for any particular definition of 'corruptly'" because "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent"); *id.* at 341 (noting that the dissent also "declines to settle on a precise meaning of 'corruptly' at this time" and thus "share[s] much common ground" with the lead opinion "on the issue of mens rea"); *id.* at 379-81 (Katsas, J., dissenting) (surveying possible definitions of "corruptly" but declining to adopt one). Although the concurrence would have determined that "corruptly" means "a criminal intent to procure an unlawful benefit," *id.* at 352 (Walker, J., concurring), the resolution of that *mens rea* issue was not necessary to the court's holding concerning the *actus reus* of the offense—which Judge Walker joined by concurring in all but a section and a footnote in the lead opinion and concurring in the judgment—and his views on the meaning of "corruptly" were not adopted by the other judges on the panel. It is thus clear that *Fischer* did not "define[] the element 'corruptly' in 18 U.S.C.§ 1512(c)(2)" in any fashion, much less "in a manner that was inconsistent with the jury instruction given in Mr. Sheppard's trial." Dkt. 100 at 1.

Reading *Fischer* to have left unresolved the definition of "corruptly" in § 1512(c)(2) is consistent with how the case was litigated. Although the defendants argued in the district court

8

that § 1512(c)(2)'s *mens rea* requirement was unconstitutionally vague, *see United States v. Miller*, 589 F. Supp. 3d 60, 65 (D.D.C. 2022), the court did not address that argument and specifically declined to interpret "corruptly" when adjudicating the government's reconsideration motion, *see United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022). The question presented in *Fischer* concerned Section 1512(c)(2)'s *actus reus* requirement, *see* Brief for the United States, *United States v. Fischer*, No. 22-3038, at 2-3 (whether § 1512(c)(2) covers the defendants' "alleged conduct"), and the government's opening 68-page brief devoted only three pages to addressing "corruptly" when discussing limitations on the statute's reach. *See Fischer*, 64 F.4th at 340 (opinion of Pan, J.) (noting that the parties addressed "corruptly" "only peripherally" in the briefs). With respect to defining "corruptly" in § 1512(c)(2), the Court in *Fischer* did not have the "benefits of the normal litigation process," *id.*, which in turn risks an "improvident or ill-advised" ruling on an issue not squarely presented. *United States v. West*, 392 F.3d 450, 459 (D.C. Cir. 2004).

Relatedly, treating the concurrence's "corruptly" definition in *Fischer* as a binding holding would be in tension with the party-presentation principle, under which courts "rely on the parties to frame issues for decision and assign courts the role of neutral arbiter of matters the parties present." *Sineneng-Smith v. United States*, 140 S. Ct. 1575, 1579 (2020) (citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). The concurrence's suggestion, *Fischer*, 64 F.4th at 352 n.1 (Walker, J. concurring), that the parties adequately presented the interpretation of "corruptly" is mistaken. The concurrence observed that the defendants had "raised the issue below," *id.*, without acknowledging that the district court never adjudicated the vagueness challenge or defined "corruptly." And although the concurrence relied on "lengthy discussions by several district judges

in similar cases," *id.*, those judges also declined to offer definitive interpretations of "corruptly" in those rulings. *See, e.g.*, *United States v. Montgomery*, 578 F. Supp. 3d 54, 84 n.5 (D.D.C. 2021) ("[B]ecause the Court has yet to hear from the parties on the proper jury instructions, the Court will leave for another day the question whether this formulation [of corruptly]—or a slightly different formulation—will best guide the jury."). In short, the concurrence's interpretation of "corruptly" did not result from the "crucible of litigation," *Fischer*, 64 F.4th at 340 (opinion of Pan, J.), and thus should not be treated as authoritative.

      **B.**      **Judge Walker's Proposed Definition of "Corruptly" Is Not Controlling.**

There is likewise no merit to Sheppard's suggestion that Judge Walker's proposed definition of "corruptly" is "controlling law at this point." Dkt. 102 at 3. In making that assertion, Sheppard is presumably assuming that this Court would apply the rule announced in *United States v. Marks*, 430 U.S. 188, 193 (1977), and clarified in *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc), to the various opinions in *Fischer*. Not only should the Court resist that invitation, but even were it to do so, no interpretation of "corruptly" emerged as a "common denominator of the Court's reasoning." *King*, 950 F.2d at 781.

          **i.**      *Marks* **is Inapposite**

There is no reason for this Court to turn to *Marks* for guidance on how to interpret *Fischer*'s holding. In *Marks*, the Supreme Court held that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (plurality op.)). *Marks* is inapposite for several reasons.

First, there is a "single rationale explaining the result" in *Fischer* that a majority of the Court adopted: all but Section I.C.1 (declining to interpret "corruptly") and footnote 8 of the lead opinion. That opinion held in Section I.A that Section 1512(c)(2) was "unambiguous": it "applies to all forms of corrupt obstruction of an official proceeding" other than the document destruction and evidence tampering already covered in Section 1512(c)(1). *Fischer*, 64 F.4th at 336. Thus, unlike the situation described in *Marks*—where more than five Justices agreed on a result, but no five Justices agreed on a rationale—in *Fischer*, a majority of the Court *did* agree on a rationale explaining the result: § 1512(c)(2)'s unambiguous statutory text describing the *actus reus* of the offense.

In this respect, the *Fischer* lead opinion resembles those that have commanded a five-Justice majority in the Supreme Court, with one Justice writing a concurring opinion explaining his or her disagreement with aspects of the majority opinion but joining it anyway. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352-53 (2011) (Thomas, J., concurring); *Arizona v. Gant*, 556 U.S. 332, 354 (2009) (Scalia, J., concurring); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 408 (2002) (O'Connor, J, concurring). In such a case, the majority opinion controls and *Marks* has no applicability. *See* Richard M. Re, Beyond the Marks Rule, 132 Harv. L. Rev. 1942, 2001-02 nn.311, 322 (2019) (noting that appellate courts have never applied the *Marks* rule to *Concepcion* and *Gant*). In *Fischer*, Judge Walker joined the portion of the lead opinion holding that § 1512(c)(2) encompasses all forms of obstructive conduct. That is *Fischer*'s clear holding. The fact that Judge Walker's understanding of the statute's *mens rea* requirement informed his decision to join the majority opinion does not make that understanding a holding of the court. *Cf. King v. Palmer*, 950 F.2d 771, 784 (D.C. Cir. 1991) (en banc) (observing that "the result is binding

11

even when the Court fails to agree on reasoning") (citing *National Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 655 (1949) (Frankfurter, J., dissenting)).

Second, as both the lead opinion and the concurrence in *Fischer* recognized, the D.C. Circuit has never applied *Marks* to its own cases (much less suggested that district courts should apply it to D.C. Circuit cases). *See Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.); *id.* at 362 n.10 (Walker, J., concurring). Indeed, "only one federal appellate court has done so." *Id.* at 341 n.5 (opinion of Pan, J.) (citing *Binderup v. U.S. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc)). Insofar as this Court "needs some rule to decide the holding" of *Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring), that rule is apparent: it should follow the parts of the opinion agreed upon by a majority of the panel, namely, that § 1512(c)(2)'s plain text encompasses all forms of obstructive conduct.

Applying the concurrence's view of *Marks* to *Fischer* would be particularly "problematic." *King*, 950 F.2d at 782; *see Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring) (suggesting that his "reading of 'corruptly' may . . . be controlling" under *Marks*). As the D.C. Circuit has observed, when all the Justices but one "do not subscribe to a given approach to a legal question, it surely cannot be proper to endow that approach with controlling force, no matter how persuasive it may be." *King*, 950 F.2d at 782. So too here: a single opinion that "lacks majority support," *id.*, because it decides a question the other members of the panel expressly declined to resolve should not be deemed the law in this circuit.

      ii.      ***Marks* Does not Lead to Sheppard's Proposed Outcome.**

Even were this Court to apply a *Marks* analysis to *Fischer*, it would not require the Court to adopt the concurrence's view of the meaning of "corruptly" in § 1512(c)(2). In *King*, the D.C.

12

Circuit sitting en banc held that "*Marks* is workable—one opinion can be meaningfully regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." 950 F.2d at 781; *see generally* Beyond the Marks Rule, *supra*, at 1994-95 (noting that the D.C. Circuit has adopted a narrower reading of *Marks* than other courts of appeals); *see also United States v. Duvall*, 740 F.3d 604, 618 (D.C. Cir. 2013) (Williams, J., concurring in denial of rehearing en banc). But the concurrence's reading of "corruptly" does not "embody a position implicitly approved by at least [two judges] who support the judgment"; to the contrary, a "majority of the panel . . . expressly declined to endorse the concurrence's definition of 'corruptly.'" *Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.).

Moreover, the concurrence's definition was "not one with which [the lead] opinion 'must necessarily agree as a logical consequence of its own, broader position' because [the lead] opinion t[ook] no position on the exact meaning of 'corruptly.'" *Id.* (quoting *King*, 950 F.2d at 782). To be sure, Judge Walker contended that his opinion was "narrower" than the lead opinion because he "read[s] [§ 1512](c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to convict," *id.* at 362 n.10 (Walker, J., concurring). But that contention proceeds from the mistaken premise that the lead opinion adopted "all th[e] formulations" of "corruptly" that it considered, *id.*, when in fact it declined to adopt a specific definition. Rather, the lead opinion resolved only the narrow question of whether an indictment that did not allege acts related to the availability or integrity of evidence properly stated a violation of § 1512(c)(2). The Court had no need to delineate the world of "conceivable defendants" that could be convicted under the

statute. *Id.* at 339-41 (opinion of Pan, J.). Nor did the Court have any need to resolve the meaning of the term "corruptly" at the motion-to-dismiss stage. The indictments in *Fischer* all alleged that the defendants acted "corruptly," as the statute requires, and any dispute about the meaning of that term could have no bearing on the sufficiency of the indictment for purposes of a motion to dismiss. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (indictment "echo[ing] the operative statutory text while also specifying the time and place of the offense" fairly informs a defendant of the charge against him). Indeed, Judge Walker recognized as much in his concurrence. *See Fischer*, 64 F.4th at 361 (Walker, J.) ("[T]he indictments should be upheld. Each contains 'the essential facts constituting the offense charged.' Fed. R. Crim. P. 7(c)(1). That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote.'").

With respect to the interpretation of the term "corruptly" in § 1512(c)(2), therefore, *Fischer* contains "no governing rule," *King*, 950 F.2d at 782, and no "'narrowest' opinion . . . to resolve all future cases," *Duvall*, 740 F.3d at 611 (Kavanaugh, J., concurring in denial of rehearing en banc). The concurrence's definition of "corruptly" in *Fischer* thus does not bind this Court. Insofar as Sheppard seeks to file an untimely motion for a new trial to raise a meritless argument that *Fischer* somehow resolved the meaning of the word "corruptly" in § 1512(c)(2), equity does not require that he be allowed to do so. *See generally* 4B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (4th ed. Apr. 2023) (explaining that "excusable neglect" is, in essence, "an equitable concept").

C.   **The Court Should Not Postpone Sentencing Until the D.C. Circuit Issues an Opinion in *Robinson*.**

In the alternative to allowing him to file an untimely motion for a new trial based on *Fischer*, Sheppard suggests that the Court should give him a longer, indefinite extension of time to file a motion for a new trial until the D.C. Circuit issues an opinion in *United States v. Roberson*, No. 22-3062.

Nothing in Rule 45(b) suggests that a court may grant an indefinite extension of time to file a motion for a new trial; indeed, Rule 32(b) states that "[t]he court must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1). Nor is there any reason for this Court to postpone sentencing pending the opinion in *Robertson*. Although the D.C. Circuit may resolve the meaning of "corruptly" in § 1512(c) in *Robertson*, the issue in that appeal revolves around the sufficiency of the evidence of the defendant's *mens rea*, and thus the court may not provide a definitive meaning of "corruptly." Even if it does, the D.C. Circuit may agree that this Court gave the correct instruction at trial. And even if the D.C. Circuit were to resolve the issue in a different way, Sheppard can make that argument on appeal.

Indeed, the jury here convicted Sheppard of four *additional* offenses beyond his conviction for obstruction of an official proceeding, none of which are impacted by *Fischer* or *Robertson*. Significantly, the guidelines analysis for one of those charges—Count Two—results in an offense level equal to that of Count One, and thus an equivalent sentencing guidelines range of 30 months to 37 months. *See* Dkt. 97 at 32 and Dkt. 95 ¶87. Collectively, Sheppard faces up to three years of imprisonment based on those additional convictions alone.

No basis exists for Sheppard's desired indefinite stay of sentencing. The purposes behind criminal sentencing are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v.*

15

*United States*, 131 S. Ct. 2382, 2387 (2011) ("[A] court must fashion a sentence 'to achieve the[se] purposes . . . to the extent that they are applicable' in a given case.") (quoting and citing 18 U.S.C. § 3551(a). Moreover, an indefinite delay is unfair to the public, which has an interest in speedy justice just like criminal defendants do and would serve to undermine respect for the rule of law. Likewise, indulging Sheppard's request to indefinitely stay sentencing undercuts both deterrence and fails to incapacitate Sheppard who, as demonstrated in the Government's sentencing memorandum, has not only failed to express any remorse for his actions on January 6 but continues to defend and justify his conduct every day on social media. *See generally* Dkt. 97. Finally, as this Court recently found, the *Fischer* Court's decision's treatment of "corruptly" did not rise to a substantial question of law likely to result in reversal of an 18 U.S.C. § 1512(c)(2) conviction in *United States v. Brock*. *See United States v. Brock*, 21-cr-140 (JDB), Dkt. 107. Defendant may elect to raise this issue on appeal, but as this Court has stated, *Fischer* is binding precedent and therefore not grounds for an indefinite delay of sentence.

//
//
//
//
//
//
//
//
//

### III. Conclusion.

For the forgoing reasons, defendant's motion for a new trial is both untimely and without merit. Respectfully, this Court should deny the motion and rescheduled Sheppard's sentencing date at the Court's earliest convenience.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: /s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470

**CERTIFICATE OF SERVICE**

On this 12th day of May 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

/s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney