# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No.   21-cr-203 (JDB)** |
| **ALEXANDER SHEPPARD** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## RESPONSE TO GOVERNMENT'S SUPPLEMENTAL RESPONSE AND MOTION FOR A NEW TRIAL IN LIGHT OF *FISCHER*

Alexander Sheppard, through undersigned counsel, submits the following response to the government's supplemental response ("Gov't Suppl.") filed on May 12, 2023, ECF No. 103, and motion for a new trial or to dismiss Count One in light of *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023).  For the following reasons, in light of *Fischer*, Mr. Sheppard's conviction on Count One (the § 1512 count) cannot stand.

## I.      The Court Should Consider Mr. Sheppard's Motion On the Merits.

As an initial matter, the government's assertion that there is no exception to the time bar in Rule 33, Gov't Suppl. at 2, is obviously belied by its own acknowledgement that "Rule 45(b)(1)(B) applies," *id*. at 3.  The government thus concedes that the Court may grant Mr. Sheppard leave to file his motion for a new trial for "good cause" upon a showing of "excusable neglect." Contrary to the government's suggestions, the "good cause" and "excusable neglect" standards are clearly met here.

"There is no dispute that a significant intervening change in law constitutes a valid basis to extend time under Rule 45(b)(1)(B)." *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015). The government cites no case in which any court has denied an extension to file a new trial motion based on a new applicable binding case.  Rather, "[t]rial courts often find

that defendants who file motions after an intervening change in the law satisfy FRCrP 45(b)(1)." *United States v. Robinson*, 2019 WL 7985173, at *5 (W.D. Tenn. Nov. 13, 2019) (finding good cause and excusable neglect for defendant's Rule 29 motion filed "about a month and a half after *Rehaif* was decided"). *See also United States v. Sepulveda*, 2019 WL 5704398, at *9-10 (S.D.N.Y. Nov. 5, 2019) (same); *United States v. Collins*, 2019 WL 3432591 at *2 n.1 (S.D. W. Va. July 30, 2019) ("Because the motion was filed shortly after the *Rehaif* decision was issued, prior to sentencing, and involves an issue the Defendant preserved, the Court finds consideration of the motions on the merits to be appropriate."); *United States v. Parasmo,* 2023 WL 1109649, at *15 n.5 (E.D.N.Y. Jan. 30, 2023) (considering Rule 33 motion filed nine months after guilty verdict "because it was filed shortly after the Supreme Court's decision in *Ruan*"); *United States v. Hines*, 2014 WL 1875164, at *5-6 (D. Me. May 9, 2014) (*Castlemen*'s guidance justified delay in filing post-verdict motion).

In *Kirsch*, the court rejected the government's argument that "Kirsch waited too long after the *Elonis* decision—37 days—to file his . . . motion for a new trial and should have instead filed his motion within 14 days of the Supreme Court's decision." 151 F. Supp. 3d at 315. The court recognized both that nothing in the rules or case law indicates "that an extension based on a significant intervening change in the law is limited to 14 days from the date of issuance" and that, like Mr. Sheppard, Kirsch "did not know whether *Elonis* would impact his case until concluding a period of research and investigation." *Id*. The court held "that the 37 days Kirsch took to file his . . . motion for a new trial is both reasonable and justified and constitutes excusable neglect" and denied the government's request to deny Kirsch's motion as untimely. *Id*. For the same reasons, this Court should do the same here.

The government's assertions about the alleged lack of "good cause," Gov't Suppl. at 3-4, are meritless.  As the cases above show, the *Fischer* decision alone is good cause.  Nevertheless, the government argues that Mr. Sheppard has not shown diligence or any "reason for the delay." Gov't Suppl. at 3-5 (emphasis omitted).  Assuming *arguendo* that diligence must be shown—and nowhere does Rule 45 say anything about diligence—the standard is met here.

Undersigned counsel has been diligently working on the motion but is handling a huge number of other pressing matters.  Undersigned counsel's workload is also good cause to permit Mr. Sheppard's motion.  Between April 7 (the date *Fischer* was decided) and April 27 (Mr. Sheppard's originally scheduled sentencing date), undersigned counsel handled twenty-five active pretrial cases.  In addition to representing Mr. Sheppard and preparing the objections to his PSR, drafting and filing his sentencing memorandum, and preparing for his sentencing hearing—which required an extensive amount of time—counsel was required to appear at over ten hearings in other matters, review over 2.5 terabytes of discovery for an upcoming murder trial, draft and file a sentencing memorandum in another case, travel twice out of town for witness interviews, draft and file pretrial motions and motions in limine in another January 6 case, and meet with clients on multiple occasions for hours at various jail facilities in the region. Since then, counsel was in trial in *United States v. Isaac Sturgeon*, 21-cr-091 (RCL), from May 15 to 25.  Counsel has also had to prepare for five additional upcoming trials, scheduled for July 17, 2023, August 14, 2023, September 18, 2023, October 10, 2023, and November 6, 2023.  In light of these other pressing matters, it was not possible for undersigned counsel to file Mr. Sheppard's motion for new trial before now.  The "basis for [Mr. Sheppard's] ongoing failure to file his motion for a new trial," Gov't Suppl. at 4, was reasonable, and counsel has filed Mr. Sheppard's motion for new trial at her earliest possible opportunity.

The cases the government cites for its "good cause" standard (Gov't Suppl. at 3-4) are completely inapposite. *In re Kirkland*, 86 F.3d 172 (10th Cir. 1996), addresses a bankruptcy court's dismissal of a complaint for lack of timely service. That decision in no way applies to this criminal motion for a new trial. Further, in *United States v. Griffith*, 2023 WL 3275619, at *2 (D.D.C. May 5, 2023), the court found a motion untimely only to the extent that the defendant relied on Rule 12 and asked to dismiss the case at the conclusion of trial based on a defective indictment. *Id.* at *2. The court made no timeliness or lack of cause finding with respect to Rule 29 or 33. *See id.* at *2-3. The same judge has granted a motion for leave to file a late new trial motion under Rule 33. *United States v. Edwards*, 943 F. Supp. 2d 125, 127 (D.D.C. 2013).

The government's arguments about excusable neglect are similarly meritless. The government does not dispute that counsel acted in good faith and had no control over the timing of *Fischer*. Gov't Resp. at 5. The government offers no good justification to bar Mr. Sheppard's motion on timeliness grounds, simply because it was filed more than 14 days after *Fischer*. By contrast, every single *Pioneer* factor weighs in favor of Mr. Sheppard. The delay of litigating the new trial motion and/or waiting for the outcome of *Robertson* is in no way prejudicial to the government, nor is it "indefinite." The government will be prosecuting January 6 cases for years to come. *Robertson* is fully briefed and has already been argued. The government offers no support for its baseless assertion that continuing this case for a few months will somehow "affect every other defendant charged with or convicted of" § 1512. *Id.* at 6. This case is unique in that the § 1512 charge was Mr. Sheppard's *sole* felony count—all of the other charges were misdemeanors; the issue of whether Mr. Sheppard had "corrupt intent" was the main issue at trial; and Mr. Sheppard preserved his objection to the Court's erroneous jury instruction on "corruptly."

Therefore, the Court should permit and consider Mr. Sheppard's new trial motion on the merits, or continue sentencing until after *Robertson* is decided.

## II.     Judge Walker's Opinion in *Fischer* is Controlling and Binding on this Court.

In *Fischer*, the government appealed Judge Nichols' dismissal of its § 1512(c)(2) charge in three January 6 cases. On April 7, the court of appeals issued a decision that was, in the words of Judge Walker, "splintered." 64 F.4th at 362 n.10 (Walker, J., concurring in part). Two of the panel's judges concluded that the government's construction of § 1512(c)(2) in the January 6 cases featured a "'breathtaking' and untenable scope." *Id*. at 381 (Katsas, J., dissenting); 360 (Walker, J., concurring in part) (same). Judge Pan, however, issued a lead opinion stating that "we conclude that the district court erred in dismissing" the § 1512(c)(2) charge, which Judge Walker partly joined by "concur[ring] in the Court's judgment and join[ing] the lead opinion's interpretation of (c)(2)'s act element." *Id.* at 351.

In his concurrence, Judge Walker noted that he did not join Section I.C.1 of Judge Pan's opinion—concerning the term "corruptly" in § 1512(c)(2)—and would not join any part of her "proposed" opinion if the "corruptly" element were interpreted in the manner proposed by the government in *Fischer* and in all January 6 cases. *Id*. at 351. Judge Walker made the conditional nature of his vote explicit multiple times:

> • "Though the district court did not reach the meaning of 'corruptly,' we have no choice. As I will explain . . .*my vote to uphold the indictments depends on it.*" *Id*. at 352 n. 1 (emphasis added);

> • "Because I read 'corruptly' as courts have read it for hundreds of years—and *only* because I read it that way—I concur in the Court's judgment." *Id*. at 362 (emphasis original);

> • "[M]y reading of 'corruptly' is *necessary to my vote* to join the lead opinion's *proposed* holding on 'obstructs, influences, or impedes' an 'official proceeding.'" *Id*. at 361 n.10 (emphasis added);

• "If I did not read 'corruptly' narrowly, *I would join the dissenting opinion.* That's because giving 'corruptly' its narrow, long-established meaning resolves *otherwise compelling structural arguments for affirming the district court,* as well as the Defendants' vagueness concerns." *Id.* (emphasis added);

• "[I]n my view, *the rationale in the lead opinion is not enough to uphold the indictments.*" *Id.* (emphasis added).

Judge Walker then exhaustively traced the legal history of the term "corruptly" "[f]rom Tudor England to state courts to federal statutes." *Id.* at 353. The Judge considered foreign, state and federal precedents, including from this circuit. *Id.* at 353–56.  Judge Walker concluded that to act "corruptly" under § 1512(c)(2), a "defendant must intend to obtain a benefit that he *knows* is unlawful." *Id.* at 358 (emphasis in original) (citing *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)). The Judge could not have been more explicit that, absent that definition of "corruptly," the government's construction of § 1512(c)(2) in the January 6 cases suffered from "vagueness" and an impermissible "breathtaking scope." *Id.* at 352, 360-62.

In dissent, Judge Katsas comprehensively showed that the text of § 1512(c), nearby provisions, the section as a whole, related statutes, canons of construction, and statutory history all run contrary to the government's unprecedented argument that § 1512(c) reaches acts that have no connection to evidence impairment. *Id.* at 363-83 (Katsas, J., dissenting). The Judge's dissent has the hallmarks of being what was originally a memorandum opinion of the Court.

Judge Walker's concurrence is the controlling opinion of the court of appeals under long-observed practice. As Judge Walker noted, the Supreme Court's "test for deciding the holding of a fractured" judgment states that where "'no single rationale explaining the result enjoys the assent of [a majority]' . . .the court's holding is the 'position taken' by a judge 'who concurred in the judgments on the narrowest grounds.'" *Id.* at 362 n. 10 (Walker, J., concurring in part) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). At least one circuit has applied the

Marks rule to its own splintered judgments. *Binderup v. Attorney General*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc). Unequivocally, Judge Walker opined that the *Fischer* decision itself was one where "no single rationale explaining the result enjoys the assent of [a majority]." 64 F.4th at 362 n. 10 (Walker, J., concurring in part). The Judge also identified his concurring opinion as the "narrowest grounds" of decision since it occupied a "'logical subset of other broader opinions,'" i.e., a subset of Judge Pan's opinion. *Id*. (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)).

In a footnote, Judge Pan disputed Judge Walker's suggestion that the concurrence was controlling. *Id*. at 341 n. 5. Judge Pan's reasoning was flawed and unpersuasive. First, while Judge Pan observed that it "seems that only one federal appellate court has" applied the *Marks* rule to its own decisions, she failed to identify any circuit that has declined to apply *Marks* to its splintered judgments.

Second, Judge Pan stated that, "the concurring opinion's attempt to establish its view as controlling must fail because a majority of the panel has expressly declined to endorse the concurrence's definition of 'corruptly.'" 64 F.4th at 341 n. 5. That factual assertion is neither accurate nor relevant to the *Marks* rule. To be controlling under *Marks*, an opinion need only concur with the lead opinion and be resolved on the narrowest grounds among the lead opinion and those in agreement with it. *Marks*, 430 U.S. at 193. There is no requirement that the controlling concurrence find agreement with a dissenting judge. *Id*. In any case, Judge Pan was factually mistaken: Judge Katsas did not dispute Judge Walker's view that the "corruptly" element necessarily entails the requirement that a defendant act with the intention of obtaining an unlawful benefit. *Fischer*, 64 F.4th at 381 (Katsas, J., dissenting). Instead, the dissent found that even with that "torqued-up mens rea, section 1512(c)(2) still would have improbable breadth."

*Id.* Judge Katsas agreed with the concurrence about the necessity of an unlawful benefit in the definition of "corruptly": "The dissenting opinion says a defendant can act 'corruptly' only if the benefit he intends to procure is a 'financial, professional, or exculpatory advantage.'" *Id.* at 356 n. 5 (Walker, J., concurring in part).

Third, Judge Pan opined that Judge Walker's concurrence did not reflect a "logical subset" of her own opinion and "adopts a new test for 'corrupt' intent that has not been requested by any party." *Id.* at 341 n. 5. Both points are inaccurate. The defendant-appellees argued that the Court was required to address the "corruptly" element to avoid overbreadth and First Amendment issues and explicitly contended that the term required proof of an intent to obtain an unlawful advantage. Indeed, the government's opening brief argued that the district court's concerns about vagueness were mistaken precisely because the government's construction of "corruptly" was sound. During oral argument, both parties asked the Court to resolve the meaning of "corruptly." And the government had an opportunity to address the "corruptly" definition proposed by the defendant-appellees in its reply brief. Judge Walker recognized all of this. *Id.* at 352 n. 1 (Walker, J., concurring in part).

Judge Walker also explained why the concurrence was necessarily a "logical subset" of the lead opinion:

> I read (c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to convict. So my opinion is a "logical subset of [an] other, broader opinion[]." *Id.* (cleaned up). In contrast, the lead opinion suggests three plausible readings [of "corruptly"], including mine. Lead Op. 17-18. It then says the Defendants' alleged conduct is sufficient "[u]nder all those formulations." *Id.* (emphasis added). Though the lead opinion says elsewhere that it "takes no position on the exact meaning of 'corruptly,'" it must take some position on it. Lead Op. 21 n.5. Without taking a position, the lead opinion could not conclude, as it does, that the indictments should be upheld.  Put differently, if a defendant is guilty under my approach, he will be guilty under the lead opinion's. But some of the defendants guilty under the lead opinion's approach will not be guilty under

my approach. Mine is the "position taken" by the panel member "who concurred
in the judgment[ ] on the narrowest grounds." *Marks*, 430 U.S. at 193.

*Id*. at 362 n. 10 (Walker, J., concurring in part). Thus, Judge Walker's concurrence is binding as

the opinion of a panel member "who concurred in the judgments on the narrowest grounds."

*Marks*, 430 U.S. at 193; *Binderup*, 836 F.3d at 356.

Judge Walker was also correct as a matter of law. He painstakingly traced the legal

definition of "corruptly" from the Tudor England era. The Judge compellingly showed that,

absent that narrowed definition of "corruptly," the government's interpretation of § 1512(c)(2) is

overly broad and vague in the congressional proceedings context, criminalizing ordinary

legislative business and lawful protest. Second, and apart from the *Marks* rule, Judge Walker

made clear that his "vote to uphold the [§ 1512(c)(2) charge] depends on" the application of this

definition of "corruptly." *Id*. at 352 n. 1 (Walker, J., concurring in part). Two of the panel's

judges—a majority of the panel—concluded that the government's construction of § 1512(c)(2)

in the January 6 cases featured a "'breathtaking' and untenable scope." *Id*. at 381 (Katsas, J.,

dissenting) and 360 (Walker, J., concurring in part) (same). Consequently, the jury here was

instructed on an interpretation of § 1512(c)(2) that a majority of the panel found untenable.

The government repeatedly asserts that *Fischer* held only that "Section 1512(c)(2) was

'unambiguous'" and "'applies to all forms of corrupt obstruction of an official proceeding' other

than document destruction and evidence tampering."  Gov't Suppl. at 11 (quoting *Fischer*, 64

F.4th at 336); *id*. at 12 ("§ 1512(c)(2)'s plain text encompasses all forms of obstructive

conduct").  That § 1512 unambiguously "applies to all forms of corrupt obstruction," however,

does not make the statutory provision as a whole unambiguous and constitutional.  Judge Walker

made clear that his reading of corruptly was "necessary to [his] vote to join the lead opinion's

proposed holding on 'obstructs, influences, or impedes' an 'official proceeding'" because it

resolved "otherwise compelling structural arguments for affirming the district court" and

unconstitutional "vagueness concerns." *Fischer*, 64 F.4th at 362 n. 10.

As Judge Walker recognized, the Supreme Court has repeatedly admonished that criminal

statutes must be narrowly construed. *Id*. at 361 n.9.  Indeed, on May 11, in *Percoco v. United*

*States*, 143 S. Ct. 1130 (2023), the Supreme Court *again* repeated its admonition and constrained

a criminal fraud statute due to vagueness concerns.  *Percoco* lends additional support to Judge

Walker's decision and highlights that, without a clear limitation on "corruptly," ordinary people

cannot understand what conduct § 1512(c)(2) prohibits and it leads to arbitrary and

discriminatory enforcement, as is evident from the government's arbitrary charging decisions in

hundreds of January 6 cases.

Moreover, without any such limitation, Judge Pan's opinion in *Fischer* is effectively the

minority/dissent.  The holding of the Court reversing dismissal of the indictment cannot exist

without Judge Walker's understanding of the definition of corruptly.  Without his understanding,

Judge Nichols' dismissal of the § 1512 charge was proper.

The government argues that "the concurrence's reading of 'corruptly' does not 'embody a

position implicitly approved by at least [two judges] who support the judgment.'"  Gov't Suppl.

at 13 (quoting *Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.)).  That is incorrect.  Judge Pan

expressly recognized Judge Walker's definition of corruptly as a "candidate[.]"  *Fischer*, 64

F.4th at 339-40.   Contrary to the government's (and Judge Pan's) assertion, Judge Pan's opinion

had to necessarily agree to Judge Walker's opinion about corruptly or its own, broader position

could not stand—and the judgment of the district court would be affirmed. *See id.* at 362 n. 10

(Walker, J., concurring) ("Without taking a position, the lead opinion could not conclude, as it

does, that the indictments should be upheld.").

Lastly, contrary to the government's assertions (Gov't Suppl. at 8-9), Judge Walker's opinion is consistent with how the case was litigated and with the party presentation principle. The meaning of "corruptly" was indeed squarely presented in *Fischer* because, among other reasons, the government's opening brief itself injected the issue into the appeal. *United States v. Fischer*, No. 22-3038 (D.C. Cir. 2022), Doc. #1958170.  Indeed, the "corruptly" section of the government's opening brief in *Fischer* ran for approximately 10 pages. *Id*. The thrust of the government's appellate argument was that Judge Nichols' vagueness concerns were overdone *precisely because the government's definition of "corruptly" provided guardrails*. *Id*.

In turn, the *Fischer* appellees extensively briefed the "corruptly" element.  *United States v. Fischer*, No. 22-3038 (D.C. Cir. 2022), Doc. #1963748. And the appellees advocated for the definition of "corruptly" that Judge Walker settled on. *Id*. at 35 ("a proper definition of that element requires proof that the defendant acted with the intent to obtain an unlawful benefit for himself or an associate."). A constant argument of the appellees' brief was that words in Section 1512(c)(2) cannot be read in isolation and that every word and phrase in the statute must be given meaning, including "corruptly." *Id*. at 18-22. The notion that every word requires a separate appeal even when they are found in the same phrase ("corruptly" is in next month's case and then "official proceeding" a few months later) is self-evidently absurd.  During oral argument, the parties argued the meaning of "corruptly" for "around 15 minutes." *Fischer*, 64 F.4th at 352 n. 1 (Walker, J., concurring in part). The government specifically asked the court of appeals in *Fischer* to construe "corruptly." In fact, there was a moment in oral argument when Judge Walker pointedly asked the government's lawyer whether the government would prefer to have the court construe "corruptly" if it meant the government might otherwise lose the appeal—and the government responded affirmatively.

In sum, Judge Walker stated that his vote "depended" on this "corruptly" definition. The judge placed a clear condition on his concurrence with the lead opinion because its "rationale . . . is not enough to uphold the indictments." *Id*. at 362 n. 10 (Walker, J., concurring).  The narrowest opinion in the majority found that the problem was curable through a specific definition of "corruptly."  To the extent *Fischer* is construed in a manner that does not adopt that definition of corruptly, a majority of the *Fischer* panel concluded that the government's § 1512(c)(2) indictments could *not* be upheld.  In that case, Count One must be dismissed because § 1512(c)(2) as applied at trial was unconstitutionally vague and overbroad. There is no other logical way to interpret *Fischer*, which is now binding precedent.

Additionally, the fractured *Fischer* decision makes clear that § 1512(c)(2) is unconstitutionally vague as applied to Mr. Sheppard, in violation of his right to due process and fair warning of what conduct is illegal.  *United States v. Lanier*, 520 U.S. 259, 266-67 (1997); *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). When three appellate judges, after briefing and argument and months of consideration are unable to reach agreement on what conduct with what requisite intent is prohibited by § 1512(c)(2), there can be no doubt that Mr. Sheppard, an ordinary person who is not trained in the law, could not have known on January 6 what conduct was made criminal by §1512(c)(2). *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89-90 (1921). Indeed, in assessing whether a statute is unconstitutionally vague, the Supreme Court has found an important and relevant factor "the conflicting results which have arisen from the painstaking attempts of enlightened judges in seeking to carry out [a] statute in cases brought before them." *Id*.

With respect to fair warning:

There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires

the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ asto its application." Second, as a sort of "junior version of the vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, *cf.* U.S. Const., Art. I, § 9, cl. 3; § 10, cl. 1 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive). In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*Lanier*, 520 U.S. at 266-67 (internal citations omitted).

Moreover, in the First Amendment context, which is the backdrop to the political rallies and protests that took place on January 6, and in a case where there was no evidence whatsoever that Mr. Sheppard personally engaged in or encouraged or endorsed using violent or assaultive conduct or destruction of property, the due process implications are even more heightened.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

In light of the fractured decision in *Fischer*, the Supreme Court's admonition in *Yates v. United States* is particularly apt:

> [I]f our recourse to traditional tools of statutory construction leaves any doubt about the meaning of "tangible object," as that term is used in § 1519, we would invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." That interpretative principle is relevant here, where the Government urges a reading of § 1519 that exposes individuals to 20-year prison sentences for tampering with any physical object that might have evidentiary value in any federal investigation into any offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil. ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "tangible object" in § 1519, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite" (rule of lenity "reinforces" the conclusion that arson of an owner-occupied residence is not subject to federal prosecution under 18 U.S.C. § 844(i) because such a residence does not qualify as property "used in" commerce or commerce-affecting activity).

*Yates v. United States*, 574 U.S. 528, 547-48 (2015) (internal citations omitted).

Vague laws "leav[e] people in the dark about what the law demands and allow[] prosecutors and courts to make it up." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018). The perspective is that of a reasonably intelligent person. If the government is charging hundreds of people with misdemeanors for the same conduct that results in a felony charge punishable by 20 years' imprisonment, it raises the second concern that the vagueness doctrine seeks to prevent. Indeed, as to Mr. Sheppard, who did not commit any violence, destroy any property, battle law enforcement, or bring weapons to the Capitol, his § 1512(c)(2) charge was exponentially more severe than others who committed similar or even more serious conduct. When crimes are not sufficiently demarcated it makes possible such an exercise of arbitrary enforcement. The ambiguities in the statute constitute a gross absence of "standards to govern the actions of police officers, prosecutors, juries and judges" with the resulting arbitrary application of the law. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). The Due Process clause requires dismissal of the § 1512(c)(2) count under these circumstances.

**III.    The Court Should Grant a New Trial to Mr. Sheppard Because the Jury Instruction on § 1512(c)(2) Was Erroneous and the Error Severely Prejudiced Mr. Sheppard / Affected His Substantial Rights.**

A motion seeking a new trial should be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a).  Trial courts have broad discretion to grant a new trial.  *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014).  A new trial is warranted where a serious miscarriage of justice may have occurred.  *Id*.  Courts in this district have indicated "that a clearly erroneous and prejudicial jury instruction could well necessitate a new trial."  *United States v. Moore*, No. 18-cr-198 (JEB), 2023 WL 1070562, at *2 (D.D.C. Jan. 27, 2023) (citing *United States v. Vicaria*, 12 F.3d 195, 198-99 (11th Cir. 1994); *United States v. Adams*, 150 F. Supp. 3d 32, 36 (D.D.C. 2015)); *United States v. Sutton*, No. 21-cr-598 (PLF), 2023 WL 3478484, at *2 (D.D.C. May 16, 2023).  "Unlike a motion for judgment of acquittal, when ruling on a motion for a new trial 'the Court need not accept the evidence in the light most favorable to the government, and [it] may weigh the testimony and may consider the credibility of the witnesses.'" *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (quoting *United States v. Edmunds*, 765 F. Supp. 1112, 1118-19 (D.D.C. 1991)); *Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982).

**A.    The Jury Was Improperly Instructed on the "Corruptly" Mens Rea Element of Section 1512(c)(2).**

At Mr. Sheppard's trial, the Court instructed the jury:

> To act "corruptly," a defendant must use unlawful means or act with an unlawful purpose, or both. He must also act with "consciousness of wrongdoing," which means with an understanding or awareness that what the person is doing is wrong."

*See* Final Jury Instructions at 28.  That vague instruction was erroneous.  For the reasons discussed above, under *Fischer*'s now-binding definition of corruptly, it must be the defendant's

objective or purpose to procure an unlawful benefit, "that he *knows* is unlawful," for himself or for some other person.  *Fischer*, 64 F.4th at 352, 358.

### B.      The Erroneous Instruction Was Highly Prejudicial.

In assessing the prejudice of an erroneous jury instruction, courts must consider "all the circumstances—the language of the instructions, the arguments of counsel, and the evidence itself."  *United States v. Hite*, 769 F.3d 1154, 1166 (D.C. Cir. 2014) (citation omitted).  "Where the instructions are erroneous, causing grave doubts about whether the jury based its verdict on the proper construction of guilty purpose or intent, a new trial is required."  *Id*. at 1167.

The error in this case was highly prejudicial. As an initial matter, the entire decision of Mr. Sheppard to even proceed to trial in this matter was based on Count One as he was more than willing to enter pleas on the other counts. Therefore, the prejudice in this matter is severe as it is only this charge – the one that formed the intent to proceed to trial – that the appeals court has changed the law on. Furthermore, considering the unique facts of Mr. Sheppard's case, the jury likely would have acquitted him on Count One had it been presented the defense theory under the correct definition of "corruptly," essentially that Mr. Sheppard did not intend to procure an unlawful benefit. Rather, the jury was provided the incorrect definition and so the entire trial was tainted by this incorrect and vague definition.

The facts adduced at trial showed that Mr. Sheppard was not violent, did not destroy property, was not aggressive, and his sole purpose was to do exactly what the former President told him to do – and that was to encourage Mike Pence and Senators to *legally* object to the certification of the votes so that those votes could be re-certified by the States. The former President told the crowd that morning that this would be a *lawful* result and that top constitutional scholars analyzed the options and concurred that Mike Pence had the authority to

object under the Constitution.[1] The jury was not presented with the theory that Mr. Sheppard could not be acting corruptly because he did not intend to obtain an unlawful benefit. Rather, he intended to obtain what he believed was a *lawful* benefit – the same as any other encouragement on Capitol Hill by the people advocating for other lawful change.

The defense theory and proper jury instruction would have prompted the jury to view the evidence in an entirely different light. Judge Walker's definition of "corruptly" made clear that to convict a defendant, the government must prove that the "unlawful means" used to obtain that benefit had to be "independent" unlawful means. So it cannot be that simply because a defendant committed a separate crime (trespass), his intent was corrupt.  In other words, the government could not simply rely on the theory that Mr. Sheppard's trespass was de facto the independent unlawful means to form corrupt intent. Rather, they would have to prove a direct nexus to an unlawful means that was directly tied to obstructing the vote.

The evidence at trial showed that Mr. Sheppard did not want the certification to come to a halt –because that would not produce his desired result. In Mr. Sheppard's mind, the certification had to continue in order for Mike Pence to vote in the way that he and President Trump wished for him to vote. Evidence also showed that Mr. Sheppard did not understand that by trespassing in the Capitol building – that would have the natural and probable effect of halting the vote count. So, there is no nexus between the two alleged activities and the jury would have likely acquitted him on Count One for that reason. Simply put, the trespass was entirely incidental and was not the unlawful "tool" required to obtain the unlawful benefit that Mr. Sheppard sought. If anything, it created an undesired result entirely by mistake or accident.

---

[1] Naylor, Brian, *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR, February 10, 2021 available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial (last viewed on May 26, 2023).

In light of the flawed instruction, the jury convicted Mr. Sheppard for no more than broadly contributing to the halt of the certification proceeding because they were not required to take further steps regarding his *mens rea*. Indeed, in closing argument, the prosecutor suggested to the jury that Mr. Sheppard could be convicted by proof that he merely acted with an unlawful purpose because he knew that entering into the Capitol building without authorization was wrong, rather than by proof that he specifically intended to procure an unlawful benefit or used independently unlawful means to directly procure that unlawful benefit. Therefore, the government did not provide sufficient evidence under Judge Walker's definition of "corruptly." The government also had insufficient evidence to prove Mr. Sheppard's corrupt intent because they did not present messages or statements prior to January 6, 2021, showing any desire for the certification proceeding to be stopped or influenced by unlawful means or showing any desire to obtain an unlawful benefit. Rather, all of Mr. Sheppard's pre January 6 statements showed the opposite. First, that he wished to attend the "Stop the Steal" rally, and second that he was on his way to protest the fraudulent election. Mr. Sheppard not only shared this information on a video he recorded but also in messages to friends prior to January 6, 2021. His intent was clear and consistent – his purpose was to protest the fraudulent election and not to participate in an insurrection, a coup, or to prevent the certification proceeding from happening. None of these statements prove an intent to procure an unlawful benefit.

When Mr. Sheppard, inside the building, parroted the words of those around him that "Congress had been shut down," he was merely repeating what others were telling him.  This statement does not outweigh the other evidence that, throughout the day, he wanted the vote to proceed so that Mike Pence could finish his important part of objecting to the states votes. This statement alone, in the light of all of the other evidence and in light of the correct definition of

"corruptly," would not be sufficient for the jury to conclude that Mr. Sheppard acted with "corrupt intent."

With the correct jury instruction, no reasonable juror could find Mr. Sheppard guilty because he lacked corrupt intent. Evidence at trial would not support guilt because no reasonable juror could find that Mr. Sheppard desired and planned for the certification to stop because his true motivation was for President Trump to ultimately be President and the only way that could happen was if Mike Pence finished the vote count in his favor. Mr. Sheppard did not trespass into the Capitol building to obstruct the vote – rather it was incidental and reckless behavior that had no clear nexus to the certification that he believed was ongoing and that needed encouragement from the people- according to his President. Notably, the jury did not assign completely adverse credibility to Mr. Sheppard's testimony given the fact that they accepted on his testimony that he did not willfully enter the Rayburn Room because he did not see the sign above him that labeled the room as such.

Given the reasonable probability that the jury would not have convicted Mr. Sheppard if given the proper instruction, "there is a serious risk in this case of an unnecessary deprivation of liberty." *United States v. Adams*, 354 F. Supp. 3d 63, 69 (D.D.C. 2019). A serious miscarriage of justice occurred. In light of the substantial influence that the erroneous instruction could have had on the jury, this Court should grant Mr. Sheppard a new trial.

Lastly, *United States v. Larry Brock*, 21-cr-140 (JDB), is materially distinguishable. There, Mr. Brock remained on the Senate floor, where any reasonable person would have an understanding that the certification could not proceed while a trespass was occurring in the very same room that Congress would have to be in order to proceed with the vote count. *See* Brock Trial Transcript, day 3 at 8. Moreover, messages from Mr. Brock prior to January 6 that signified

that he did not want a lawful result to occur in that he said: "If Congress fails to act on January

6th: Seize all democratic politicians and Biden and key staff," and "I prefer outright insurrection

at this point." *Id.* at 10. Mr. Brock's own words demonstrate that he was intending for an

unlawful kidnapping of politicians as punishment for not voting correctly and that he wanted an

insurrection. This is entirely different from Mr. Sheppard's case in that Mr. Sheppard intended

an entirely lawful result.

## IV.   Alternatively, Court Should Continue Sentencing Until *Robertson* Decided, Which is In No Way An "Indefinite" Continuance.

The government's complaints about "indefinite" delay are unfounded and disingenuous.

*Robertson* has already been argued and will likely be decided in a few months.

In addition, the government's argument that regardless of his felony conviction, Mr.

Sheppard would still face approximately 36 months' incarceration is absurd. *See* Gov. Res. at 15.

The maximum penalty for Counts Two and Three is 12 months' incarceration on each count. The

maximum penalty for Counts Five and Six is 6 months' incarceration on each count.

Theoretically, if the Court imposed maximum consecutive sentences for Counts Two – Six, Mr.

Sheppard would receive such a sentence. However, there has not been a single court that has

imposed such a sentence based upon misdemeanor conduct – even after convictions at trial. *See*

*United States v. John Nassif*, 21-cr-421 (JDB) (Court imposed concurrent sentence between

misdemeanor counts totaling 7 months' incarceration after convictions at trial). It is just not

reasonable to suggest that the Court would impose more than triple the sentence that it imposed

in *Nassif* had Mr. Sheppard only been convicted of the misdemeanor counts.  The Court should

reject the government's contention that prejudice would not result even if the felony conviction

was removed.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
D.C. Bar No. 1031486
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org