UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ALEXANDER SHEPPARD,<br>Defendant. | Crim. Action No. 21-203 (JDB) |

### MEMORANDUM OPINION & ORDER

Before the Court is defendant Alexander Sheppard's motion for leave to file a motion for a new trial. Sheppard argues that, in light of a recent D.C. Circuit case, United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023), the Court's jury instruction defining the word "corruptly" as used in 18 U.S.C. § 1512(c)(2) (the sole felony charge of which Sheppard was convicted) was erroneous, warranting a new trial. For the reasons set forth below, the Court finds that Fischer does not require the jury instruction Sheppard argues it does, and thus will deny the request for leave to file a motion for a new trial as the motion would be futile.

### Background

Sheppard was charged via indictment with six offenses related to his activities at the U.S. Capitol on January 6, 2020: one felony count for obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and five misdemeanor counts. See Indictment [ECF No. 72]. Section 1512(c) provides in full:

> Whoever corruptly[] (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

§ 1512(c) (emphasis added).

1

Two weeks prior to trial, which began on January 20, 2023, the parties submitted proposed jury instructions for definitions of a number of terms including the word "corruptly." The government proposed the following definition:

> To act "corruptly," the defendant must use unlawful means or have a wrongful or an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Gov't's Proposed Jury Instructions [ECF No. 68] at 24. Sheppard's first set of proposed jury instructions included a similar definition of "corruptly," except that it included an additional requirement that "the defendant . . . had an intent to obstruct and to obtain an unlawful benefit for himself or an associate." See Defense Proposed Jury Instructions [ECF No. 69] at 3. Two days before jury selection, Sheppard filed an amended proposed instruction for the definition of "corruptly":

> An act is done "corruptly" if it is done voluntarily, intentionally, and dishonestly, either to bring about an unlawful result or a lawful result by some unlawful method, with a hope or expectation or other financial gain or to obtain an unlawful benefit for himself or an associate. The defendant must also act with "consciousness of wrongdoing," which means an understanding or awareness that what the person is doing is wrong or unlawful.

Additional Defense Proposed Jury Instructions [ECF No. 73] at 3.

At the time of Sheppard's trial, in the majority of other January 6 jury trials in this District having § 1512(c)(2) charges, judges instructed the jury using the definition of "corruptly" that the government proposed—that is, judges had declined to instruct the jury that there was a requirement that the defendant act with an "intent to procure an unlawful benefit." E.g., Final Jury Instructions at 29, United States v. Williams, Crim. A. No. 21-618 (ABJ) (D.D.C. Nov. 16, 2022), ECF No. 122; see also United States v. Montgomery, 578 F. Supp. 3d 54, 83 (D.D.C. 2021) ("The predominant view among the courts of appeals is that the 'corruptly' standard requires at least an

2

'improper purpose' and an 'intent to obstruct.' And the government concedes that it will be required to prove at least that Defendants acted with 'consciousness of wrongdoing.'" (footnote omitted)).

In line with those judges, following a jury instruction conference with argument from both sides, this Court adopted a definition similar to the government's proposed definition. At the conclusion of a five-day trial, it instructed the jury that

> [t]o act "corruptly," a defendant must use unlawful means or act with an unlawful purpose, or both. He must also act with "consciousness of wrongdoing," which means with an understanding or awareness that what the person is doing is wrong.

The jury convicted Sheppard on the felony count and four misdemeanors.[1] See Jan. 26, 2023 Min. Entry; Verdict Form [ECF No. 90].

On April 7, 2023, three months after Sheppard's trial and conviction, the D.C. Circuit decided United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023). Fischer was an appeal by the government of a district court's dismissal of one count of an indictment charging another defendant who participated in the riot at the Capitol on January 6 with obstructing an official proceeding in violation of § 1512(c)(2). Id. at 332–34. The district court dismissed the § 1512(c)(2) count because it held that (c)(2) "requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." United States v. Miller, 589 F. Supp. 3d 60, 78 (D.D.C. 2022) (emphasis added). Because the indictment did not allege that the defendant violated § 1512(c)(2) by committing

---

[1] Sheppard was acquitted of one misdemeanor charge, entering and remaining on the floor of Congress or the Rayburn Room, in violation of 40 U.S.C. § 5104(e)(2)(A). Jan. 26, 2023 Min. Entry; Verdict Form at 2.

obstructive acts related to "a document, record, or other object,"² the court dismissed the § 1512(c)(2) count.  589 F. Supp. 3d at 79.³

On appeal, a fractured three-judge panel of the D.C. Circuit reversed the district court's dismissal.  Fischer, 64 F.4th at 350.  Judge Pan wrote the lead opinion, which was joined by Judge Walker except as to one section—Judge Pan's discussion of the definition of "corruptly."  In the portion of the opinion joined by Judge Walker, Judge Pan held that § 1512(c)(2) contains no requirement that the obstructive acts be done with respect to a document or record and that the alleged actions of the January 6 rioters in the cases before the panel "fall[] comfortably within the plain meaning" of the statute's prohibition.  Id.; see id. at 335–39.  Judge Pan also wrote alone about the meaning of the word "corruptly."  See id. at 339–42.  She noted that "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent," id. at 339, and discussed—without expressing a preference for—three possible definitions of the word, id. at 339–40.  These possible definitions were very similar to both the government's and defendant's proposed definitions in this case.  Cf. id. at 340.⁴

---

² The indictments in the later-consolidated cases, United States v. Fischer, Crim. A. No. 21-234 (CJN) (D.D.C., filed Feb. 17, 2021), and United States v. Lang, Crim. A. No. 21-53 (CJN) (D.D.C., filed Jan. 15, 2021), also did not allege such acts.  See Indictment, Fischer, Crim. A. No. 21-234 (CJN) (D.D.C. Nov. 10, 2021), ECF No. 52; Indictment, Lang, Crim. A. No. 21-53 (CJN) (D.D.C. Sept. 15, 2021), ECF No. 36.

³ The decision in Miller was a clear anomaly: every other judge in this District to consider the meaning of "otherwise obstructs, influences, or impedes" had rejected the argument that the obstructive act be done with respect to a document or record and upheld indictments identical to those in Miller.  See United States v. McHugh, Crim. A. No. 21-453 (JDB), 2022 WL 1302880, at *3 & nn.3–4 (D.D.C. May 2, 2022) (collecting cases).

⁴ Judge Pan noted that "the government [in Fischer] asserts that the element of a 'corrupt' state of mind is satisfied when a defendant acts 'with a corrupt purpose,' through 'independently corrupt means,' or both."  Fischer, 64 F.4th at 340.  The government's proposed instruction in this case, which this Court largely adopted, is very similar.  See Gov't's Proposed Jury Instructions at 24.  Judge Pan's third proposed definition instructs that "[a]n act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person."  Fischer, 64 F.4th at 340.  Sheppard's proposed instruction was almost identical but additionally required that the defendant act "dishonestly" and suggested the clause "or to obtain an unlawful benefit for himself or an associate" in place of "or other benefit to oneself or a benefit of another person."  Additional Defense Proposed Jury Instructions at 3.

Judge Walker concurred but wrote separately to express his disagreement with Judge Pan's decision not to adopt a specific definition of "corruptly" because, in his view, the court "must define that mental state to make sense of (c)(2)'s act element." Id. at 351–63 (Walker, J., concurring in part). Judge Walker would "give 'corruptly' its long-standing meaning," which, according to him, "requires a defendant to act with an intent to procure an unlawful benefit either for himself or for some other person.'" Id. at 351 (quoting Marinello v. United States, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)).

The third judge, Judge Katsas, dissented. He read § 1512(c)(2) to cover only obstructive acts that "impair the integrity or availability of evidence" and thus would have affirmed the district court's decision dismissing the indictment (albeit on slightly different grounds). Fischer, 64 F.4th at 363–78 (Katsas, J., dissenting). He declined to endorse a definition of "corruptly" but noted that "the various possibilities that [his] colleagues suggest do not inspire much confidence." Id. at 378–82.

Thus, Fischer's primary holding as to the actus reus element of § 1512(c)(2) is clear, but any potential holding as to the mens rea element is less so. Notably, the district court in Fischer did not define "corruptly," as it dismissed the § 1512(c)(2) charges based on the actus reus element. See Fischer, 64 F.4th at 352 n.1 (Walker, J., concurring in part) (noting that "the district court did not reach the meaning of 'corruptly'" despite defendant raising the issue). The focus on the term "corruptly" began during briefing in the D.C. Circuit.

Fischer was decided on April 7, 2023. Sheppard's sentencing was scheduled for April 27, 2023, three weeks after the Fischer decision came down. On the eve of sentencing, Sheppard requested leave to file a motion for a new trial and asked the Court to postpone his sentencing to give him time to file such a motion. See Mot. for Leave to File Mot. for New Trial & Mot. to

5

Postpone Sentencing [ECF No. 100] ("Mot."). As grounds for the motion, Sheppard represented that "[a]fter consultation and careful reading of the opinion, it is apparent that the Circuit Court has defined the element 'corruptly' in 18 U.S.C. § 1512(c)(2) in a manner that was inconsistent with the jury instruction given in Mr. Sheppard's trial" because "Judge Walker's definition [in Fischer] is controlling," necessitating a new trial. Id. at 1–2.

Given that Sheppard's sentencing was set for the following day, the government quickly responded, arguing that the motion was "untimely and lacking in merit." See Gov't's Resp. to Mot. [ECF No. 101] at 1. It was untimely, the government argued, because Federal Rule of Criminal Procedure 33 "specifies that[] '[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.'" Id. at 1 (quoting Fed. R. Crim. P. 33(b)(2)). Sheppard was found guilty on January 26, 2023, and thus far more than 14 days had passed since his guilty verdict at the time of filing. On the merits, the government argued that Fischer did not decide the definition of "corruptly"; instead, a case still pending before the D.C. Circuit, United States v. Robertson, No. 22-3062 (D.C. Cir., filed Aug. 22, 2022), would decide that issue. Gov't's Resp. to Mot. at 3. Sheppard then filed a reply in support of his motion. See Reply in Supp. of Mot. [ECF No. 102].

At the beginning of Sheppard's April 27, 2023 sentencing hearing, the Court determined that it needed additional time and briefing to decide whether Sheppard should be granted leave to file a motion for a new trial. Given the futility of sentencing him if the Court would ultimately grant him a new trial, the Court postponed the sentencing and ordered supplemental briefing. The government filed a supplement on May 12, 2023, see Gov't's Suppl. Resp. to Mot. [ECF No. 103] ("Gov't Suppl."), and Sheppard filed a supplement on May 26, 2023, see Resp. to Gov't Suppl. & Mot. for New Trial in Light of Fischer [ECF No. 104] ("Def. Suppl."). Sheppard's supplement

6

both responded to the government's arguments as to why he should not be permitted to file a motion for a new trial and made substantive arguments in support of a new trial. The motion is now briefed and ripe for decision.

## Legal Standards

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Under Federal Rule of Criminal Procedure 33(b)(2), "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." However, under Federal Rule of Criminal Procedure 45(b), "for good cause" a court may extend the time for a party to act "after the time expires if the party failed to act because of excusable neglect." "Excusable neglect" covers late filings "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control." Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993). Courts consider four factors when determining whether to excuse untimeliness: "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." Cohen v. Bd. of Trustees of the Univ. of Dist. of Columbia, 819 F.3d 476, 479 (D.C. Cir. 2016) (citing Pioneer, 507 U.S. at 395).

"There is no dispute that a significant intervening change in law constitutes a valid basis to extend time under Rule 45(b)(1)(B)," United States v. Kirsch, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015), and courts routinely find excusable neglect when a defendant files a motion shortly after significant, relevant changes in law which would provide a basis for the relief sought, see, e.g., United States v. Parasmo, 19-CR-1 (JMA), 2023 WL 1109649, at *15 n.5 (E.D.N.Y. Jan. 30, 2023)

7

(considering Rule 33 motion filed nine months after guilty verdict "because it was filed shortly after [a relevant] Supreme Court[] decision"). Of course, not every intervening appellate decision will actually provide a basis for the relief a defendant seeks—if a motion based on the intervening decision would not be meritorious, courts have discretion to deny a motion for leave to file. See United States v. Ryans, 709 F. App'x 611, 617 (11th Cir. 2017) (noting that the defendant "suffered no prejudice from the denial of his motions for extension of time for his untimely post-trial motion for judgment of acquittal, which, even if timely, would fail on the merits"); United States v. Hoover-Hankerson, 406 F. Supp. 2d 76, 90 (D.D.C. 2005) ("Even if the motions had been timely, defendants' grounds for a new trial appear meritless.").

## Analysis

The government asks the Court to deny Sheppard's motion for leave to file because it is untimely and meritless. After review of the parties' briefs, including the supplements, the decision in Fischer, and relevant case law, the Court concludes that if Judge Walker's proposed definition of "corruptly" in Fischer was binding on this Court, it would likely excuse Sheppard's untimeliness. However, the Court can discern no binding definition of the term "corruptly" in Fischer, let alone one meriting a new trial for Sheppard. It will thus deny the motion for leave to file a motion for new trial.

### I. Timeliness

Sheppard filed the present motion three months after he was found guilty of the § 1512(c)(2) charge. All parties agree that the motion was thus untimely—Rule 33 requires that any motion for a new trial based on "any reason other than newly discovered evidence must be filed within 14 days." See Gov't Suppl. at 2; Def. Suppl. at 1. But Rule 45 authorizes the Court to permit late-filed motions if counsel's delay is excusable. Sheppard argues that Fischer constitutes a "significant intervening change in law," Kirsch, 151 F. Supp. 3d at 315, that excuses

8

his delay. Accordingly, the parties' timeliness arguments focus on the three-week period between the release of Fischer and the filing of Sheppard's motion. While Sheppard argues that filing a motion three weeks after a significant change in law is within a reasonable time frame and should be permitted, see Def. Suppl. at 1–5, the government argues that—even if the Court accepts that Sheppard could not have filed the present motion until after Fischer—waiting three weeks after that decision until the eve of sentencing does not constitute "good cause" to allow Sheppard to file the motion for a new trial, see Gov't Suppl. at 3–4.

On this point, the Court agrees with Sheppard. If Fischer warranted a new trial, a delay of three weeks after the decision came down would not be unreasonable and would likely constitute good cause to extend the filing deadline. Courts routinely permit parties a similar amount of time to file motions in these circumstances. See, e.g., Kirsch, 151 F. Supp. 3d at 315 (rejecting argument that defendant "waited too long after the [intervening] decision—37 days—to file his . . . motion for a new trial and should have instead filed his motion within 14 days of the [intervening] decision."). A motion based on the D.C. Circuit's decision in Fischer should be no exception: the decision's three fractured opinions were lengthy and, for purposes of the present motion, raised more questions than they answered as to the proper definition of "corruptly." To be sure, the timing of Sheppard's motion was not ideal: he filed a barebones motion the day before his sentencing. It is not clear why his motion for leave to file could not have been submitted earlier, especially given that he did not simultaneously file a proposed motion for a new trial (and did not do so until a month later). But in any event, the Federal Rules of Criminal Procedure give the Court discretion to determine whether there is a good cause for an extension, and three weeks after a weighty, complex decision like Fischer falls on the timely side of the line.

Having determined that there was good cause for the delay, the Court must find that defendant's neglect was excusable—whether it was "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond party's control." Pioneer, 507 U.S. at 388.  First, the risk of prejudice to the other side is not particularly strong—Sheppard has already been found guilty, and, if the Court were to deny the motion, the government has not articulated how a delay in his sentencing would prejudice it.[5]  The second factor—the length of the delay and the potential impact on judicial proceedings—does raise some concern.  Indefinite delay in criminal cases is problematic, and the Court is sensitive to the fact that many January 6 defendants are charged with violating § 1512(c)(2) and thus "allowing Sheppard to pause his case would affect every other defendant" so charged.  See Gov't Suppl. at 6.  At the same time, clarity on the definition of "corruptly" would go a long way towards the finality of Sheppard's—and others'—§ 1512(c)(2) convictions.  Allowing Sheppard to litigate this issue would not inject further uncertainty; it would resolve the open questions with which courts are currently grappling.[6]  The remaining two factors—the reason for the delay (including whether it was within counsel's reasonable control) and whether counsel acted in good faith—weigh in favor of finding excusable neglect for the reasons already discussed: the motion is based on a complicated decision released three weeks before the present motion was filed.

The Court thus declines to adopt the government's position that even if Fischer does provide a basis for a new trial, Sheppard could not rely on it because he waited too long following the decision to seek relief.

---

[5] Of course, if the Court granted the motion, the government would be forced to retry to the case, but that is not the type of prejudice that is appropriate to consider when assessing excusable neglect.

[6] The Court is aware that the decision in Robertson may address this exact issue.  Given the concern with indefinite delay present in this case, the Court sees no reason to wait until Robertson—which hopefully provides clarity on these frequently-litigated issues, but is not guaranteed to—is decided.

## II. Impact of Fischer on Sheppard's Jury Instruction

The basis of Sheppard's motion for a new trial is that, in his view, Fischer articulated a binding definition of "corruptly" that conflicts with the instruction given at Sheppard's trial. See Def. Suppl. at 5–12; 15–20.  The Court disagrees and will thus deny Sheppard's request for leave to file a motion for a new trial as that motion would be futile.

Each member of the Fischer panel wrote separately about the proper definition of the term "corruptly."  None of those portions were joined by any other judge, and thus, there is no clear majority opinion on the definition.  Sheppard urges this Court to apply the rule set forth by the Supreme Court in Marks v. United States, 430 U.S. 188 (1977), which states that—for Supreme Court cases—"[w]hen a fragmented Court decides a case and no single rationale explaining that result enjoys the assent of Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds,'" id. at 193 (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)).  According to Sheppard, Judge Walker's concurrence was "on the narrowest grounds" as it expressly defined "corruptly" in a way that cabined the scope of § 1512(c)(2). Def. Suppl. at 6–9; see Fischer, 64 F.4th at 351–62 (Walker, J., concurring in part).

Judges Pan and Walker were acutely aware of this question and discussed the impact that Marks may have on their two opinions.  Judge Pan first raised a question of whether Marks does, or should, apply to circuit-level decisions (as opposed to only Supreme Court decisions).  See Fischer, 64 F.4th at 341 n.5.  She observed that "only one federal appellate court has" extended Marks to its own opinions and argued that "there is good reason not to extend Marks any further." Id.  "The Marks rule is 'more easily stated than applied . . . . [I]t has so obviously baffled and divided the lower courts that have considered it that it has created a degree of confusion such that it is not always useful to pursue to the utmost logical possibility.'" Id. (cleaned up) (quoting United

11

States v. Epps, 707 F.3d 337, 348 (D.C. Cir. 2013)). Judge Pan noted that even if Marks applied, the D.C. Circuit has cautioned against applying Marks in circumstances like this where "a majority of the panel has expressly declined to endorse the concurrence's definition of 'corruptly.'" Id.

Judge Walker believed his definition of "corruptly" "may . . . be controlling, at least if a future panel analyzes this splintered decision under Marks v. United States." Fischer, 64 F.4th at 362 n.10 (Walker, J., concurring in part). Because he "read (c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to convict," he argued his "opinion is a 'logical subset of another, broader opinion.'" Id. (cleaned up) (quoting United States v. Duvall, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc)).[7]

Neither judge appeared enthusiastic about the prospect of the D.C. Circuit applying Marks to its own decisions, and it may well be that future panels decline to do so. See Fischer, 64 F.4th at 341 n.5 (stressing the confusion Marks has created and the risk of "creat[ing] precedents that are unlikely to be either legally correct or practically desirable" (quoting Richard M. Re, Beyond the Marks Rule, 132 Harv. L. Rev. 1942, 1946 (2019)); id. at 362 n.10 (Walker, J., concurring in part) (agreeing that "the Marks rule has generated considerable confusion" (internal quotation marks omitted)).

In this instance, this Court need not decide whether to apply Marks because, even if it did, under D.C. Circuit precedent Judge Walker's definition of "corruptly" is not controlling for one simple reason: it is a definition that only one judge has adopted and thus does not "embody a position implicitly approved by at least [two panelists] who support the judgment." King v.

---

[7] The third judge on the Fischer panel, Judge Katsas, did not join in the judgment, and in any event, did not settle on a definition of "corruptly" either. See Fischer, 64 F.4th at 379 (Katsas, J., dissenting). He discussed the various definitions that Judge Pan's lead opinion and Judge Walker's concurrence mentioned, noting that "the various possibilities that my colleagues suggest do not inspire much confidence." Id. As for Judge Walker's proposed definition specifically, Judge Katsas criticized it for relying "most heavily on three dissents," two of which "reject the concurrence's own proposed standard" and one which defines "corruptly" as used in the tax code. Id. at 381.

Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991). Sheppard, in line with Judge Walker's concurrence, focuses on the phrases "narrowest grounds" and "logical subset" in Marks. See Def. Suppl. at 8–9. But the D.C. Circuit has clarified that, for purposes of Marks, "one opinion can be meaningfully regarded as 'narrower' than another" only when it "represent[s] a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." King, 950 F.2d at 781. For example, in Gregg v. Georgia, 428 U.S. 153 (1976), the Supreme Court assessed the impact of the splintered decision in Furman v. Georgia, 408 U.S. 238 (1972) (per curiam), on the constitutionality of the death penalty. In Furman, two Justices concluded that it was unconstitutional in all circumstances. See 408 U.S. at 305–06 (Brennan, J., concurring); id. at 370–71 (Marshall, J., concurring). Justices Stewart and White found that the death penalty was unconstitutional when applied in an arbitrary and capricious manner. Id. at 309–10 (Stewart, J., concurring); id. at 313 (White, J., concurring). A fifth Justice, Justice Douglas, found that the statute before the Court, which gave the judge and jury full discretion to apply the death penalty, was "pregnant with discrimination." Id. at 255–57 (Douglas, J., concurring). Gregg held that the opinions of Justices Stewart and White were controlling, see 428 U.S. at 169 n.15, because each of the other three concurring Justices' opinions made clear that they would "surely agree[]," King, 950 F.2d at 781, with Justices Stewart and White that the death penalty was unconstitutional when applied in an arbitrary and capricious manner. See 428 U.S. at 169 n.15; see id. at 188 n.36 (noting that the Furman dissenters were able to discern the "decisive grievance of the [concurring] opinions"). If one believes—as Justices Brennan and Marshall did— it is always unconstitutional, then it is also unconstitutional in the subset of cases identified by Justices Stewart and White. And as the D.C. Circuit noted, "Justice Douglas, who insisted that any discretion in the judge or jury to decide when to impose capital punishment rendered the

13

arrangement unconstitutional, would certainly have subscribed to Justice Stewart's notion that the death penalty could not be administered constitutionally to 'a capriciously selected random handful' of criminals." King, 950 F.2d at 781 (quoting Furman, 408 U.S. at 309–10 (Stewart, J., concurring)). Thus, applying Marks to the Furman decision was "unproblematic," as each of the five Justices in the majority would agree with the opinion that was later treated as controlling. See id.

But when "one opinion supporting the judgment does not fit entirely within a broader circle drawn by the others, Marks is problematic." King, 950 F.2d at 782; cf. Duvall, 740 F.3d at 608 (Kavanaugh, J., concurring in denial of rehearing en banc) ("Under the Marks principle, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would produce results with which a majority of the Court in that case necessarily would agree, that opinion controls." (emphasis added)).[8]

Sheppard raises three primary arguments for why a Marks analysis compels finding the concurrence's definition of "corruptly" to be binding. His first argument is that the "conditional nature of" the concurrence makes it controlling. Def. Suppl. at 5–6. The concurrence repeatedly states that its "reading of 'corruptly' is necessary to [its] vote to join the lead opinion's proposed holding on 'obstructs, influences, or impedes' an 'official proceeding.'" Fischer, 64 F.4th at 361 n.10 (Walker, J., concurring in part) (quoting § 1512(c)(2)). But the fact that the concurrence's decision to join in the majority opinion—that § 1512(c)(2) covers obstructive acts unrelated to documents and records—relied on a different rationale does not necessarily render that rationale

---

[8] Sheppard argues that Judge Pan's statement that "the concurring opinion's attempt to establish its view as controlling must fail because a majority of the panel has expressly declined to endorse the concurrence's definition of 'corruptly'" is "neither accurate nor relevant." Def. Suppl. at 7 (quoting Fischer, 64 F.4th at 341 n.5). In light of the articulation of the Marks principle in cases like King, this argument is unavailing—if a majority of a panel would not agree with the results under a given legal principle, "it surely cannot be proper to endow that approach with controlling force, no matter how persuasive it may be." King, 950 F.2d at 782.

controlling. Marks itself is premised on the idea that no majority of Justices agreed on a rationale, so that cannot be the end of the analysis. 430 U.S. at 193 (noting that the Marks analysis applies "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices . . . ." (emphasis added)). If, ultimately, some authority binding on the D.C. Circuit decides that the definition of "corruptly" is less constraining than the concurrence's definition, the result would be that Judge Walker changes his opinion on the actus reus element, not that his definition of "corruptly" would somehow becoming controlling. Instead, determining whether his definition of "corruptly" is now controlling requires further analysis of Marks as interpreted by the D.C. Circuit in King, 950 F.2d 771, and subsequent opinions.

To that end, Sheppard's second argument is that the concurrence "read[s] (c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to convict," so the concurrence is a "logical subset" of the majority as required by Marks. Def. Suppl. at 8 (quoting Fischer, 64 F.4th at 362 n.10 (Walker, J., concurring)). Based on the D.C. Circuit's understanding of what constitutes a "logical subset," Sheppard's conclusion does not follow.

It is true that Judge Walker's reading of (c)(2) could cover a smaller subset of defendants than the definitions Judge Pan proposed, but that does not mean that Judge Pan's opinion actually endorsed a broader definition. Judge Pan expressly declined to adopt a definition of "corruptly"—meaning, in theory, she is just as likely to adopt a narrower definition than Judge Walker as she is to adopt his. See Fischer, 64 F.4th at 339–40 (considering, as one possibility, a definition of "normally associated with wrongful, immoral, depraved, or evil" conduct—a definition that plausibly could exclude some defendants covered by the concurrence's definition).

On this point, the concurrence (and Sheppard) ultimately argue that because the concurrence was written to concur with the actus reus holding but also opined on the mens rea

15

element in a way that, by giving it a definition at all, necessarily was "narrower" than the majority opinion which declined to define it, the concurrence is "narrower" for Marks purposes. But as the D.C. Circuit recognized, permitting one judge to write an opinion expressing his singular view that binds all future panels and lower courts is not "workable." King, 950 F.2d at 781. Judge Walker joined the majority opinion's holding regarding the actus reus element of § 1512(c)(2). To offer a hypothetical, if a concurring judge were to add a section in his concurrence explaining that his vote to join the majority was conditional on his view that a proceeding was only an "official proceeding" for § 1512(c)(2) purposes if it took place on a Wednesday (as the Senate certification of the electoral count did), that would certainly be a narrower opinion than a majority opinion that has no holding (or, hopefully, discussion) of days of the week—but that, of course, would not make that concurrence controlling law on the definition of "official proceeding."⁹ When the judges needed to form a majority decline to take a position on an issue, thereby leaving open the possibility that they disagree with the concurrence and could, in fact, take a narrower view, it cannot be true that they "implicitly approve[]," King, 950 F.2d at 781, the position of the concurrence.

Sheppard's third argument fights the premise that the lead opinion does not adopt a definition of "corruptly": he argues that, although Judge Pan expressly declined to take a position on the meaning of "corruptly," her lead opinion actually "must take some position on it" because without doing so, it "could not conclude, as it does, that the indictments should be upheld." Def. Suppl. at 8 (quoting Fischer, 64 F. 4th at 362 n.10 (Walker, J., concurring in part)). If so, does the

---

⁹ This hypothetical is obviously extreme. But under the concurrence's logic, the "Wednesday-only" rule would be the controlling definition of "official proceeding." The concurrence defends its Marks analysis by noting that "if a defendant is guilty under my approach, he will be guilty under the lead opinion's" but "some of the defendants guilty under the lead opinion's approach will not be guilty under my approach." Fischer, 64 F.4th at 362 n.10 (Walker, J., concurring in part). This is equally true for this (fanciful) hypothetical, and that absurd result highlights the flaws in the concurrence's logic.

16

lead opinion also take a position on "official proceeding," another term used in the statute and indictments? Or decide the precise definition of "obstructs, influences, or impedes"? It does not—because to uphold the indictments based on a challenge to the actus reus element focused on the term "otherwise," as Fischer did, the opinion need not precisely define the other terms found in § 1512(c)(2) or the indictments; it must only find that the indictments, which allege that the defendants acted "corruptly," are sufficient. Fischer did not consider a challenge to a jury instruction on the definition of "corruptly," nor was it in any other posture that would require a holding on the definition of "corruptly."[10] In fact, the district court below did not ever decide the meaning of "corruptly." Further confirming this, the concurrence asserts that "the indictments should be upheld" precisely because they allege that the defendants "corruptly obstruct[ed], influence[d], and impede[d] an official proceeding." Fischer, 64 F.4th at 361 (Walker, J., concurring in part) (alterations in original). The lead opinion makes clear that under any plausible definition of "corruptly"—broad, narrow in the same sense as the concurrence, or narrow in some other way—it would uphold the indictment based on the facts alleged. Fischer, 64 F.4th at 339–41; see Gov't Suppl. at 14 ("The indictments in Fischer all alleged that the defendants acted 'corruptly,' as the statute requires, and any dispute about the meaning of that term could have no bearing on the sufficiency of the indictment for purposes of a motion to dismiss." (citing United States v. Williamson, 903 F.3d 124, 130 (D.C. Cir. 2018))).

---

[10] Of course, some challenges to the sufficiency of the indictment may succeed even when the indictment parrots the language of the statute. Most obviously, the district court here initially dismissed the indictment because—although it tracked the statute's language—the court found an extratextual requirement that the obstruction relate to a "document, record, or other object," Miller, 589 F. Supp. 3d at 78, and the indictment contained no allegations relating to documents or records. But there is no suggestion that any conceivable definition of "corruptly" would require concrete allegations beyond what is already alleged in January 6 cases like Fischer and the present case, and thus there is no reason why the lead opinion would need to have defined the term to deem the indictment sufficient.

17

When the Court "run[s] the facts and circumstances of the current case through the tests articulated in the [judges'] various opinions in the binding case and adopt the result[s] that a majority of the [judges] would have reached," Duvall, 740 F.3d 611 (Kavanaugh, J., concurring in denial of rehearing en banc), it is not left with Judge Walker's definition; it is left with a choice of which definition to use because Fischer does not have a binding holding on the meaning of "corruptly," even if the Court were to apply a Marks analysis.[11]  In deciding the proper jury instructions for Sheppard's trial, then, the Court chose the definition that it considered to be correct.[12]  It was not the definition Sheppard hoped for, but nothing in Fischer—including one judge's concurrence and commentary that his sole opinion could control—commands a different result.  At its core, Fischer was a case with a clear holding on the actus reus element of § 1512(c)(2), and Sheppard's attempt to also extract a holding on that statute's mens rea element pushes Fischer and the boundaries of Marks too far.

One final practical consideration supports this conclusion.  The lower court in Fischer did not decide on a meaning of "corruptly," and it is "discussed only peripherally in the parties' briefs"; thus, "the detailed analysis proffered by the concurrence is not a product of the crucible of litigation."  Fischer, 64 F.4th at 340 (citing Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983)).  It would be odd, in light of the D.C. Circuit's repeated warnings against misusing Marks, to stretch

---

[11] The only additional restriction the concurrence's definition imposed is a requirement that the defendant "act with an intent to procure an unlawful benefit either for himself or for some other person."  Fischer, 64 F.4th at 361 (Walker, J., concurring in part) (internal quotation marks omitted).  And in the context of January 6, the concurrence agreed that defendants may have acted "with the intent to procure a benefit (the presidency) for another person (Donald Trump)." Id. at 361.  This is not to say a jury would necessarily find that to be true for Sheppard, but simply to underscore that there is very little daylight between the outcome based on all the proposed definitions of "corruptly" in the context of January 6.

[12] Sheppard's motion also argues that Judge Walker's definition is "correct as a matter of law."  See Def. Suppl. at 9–10.  To the extent he asks the Court to grant a new trial simply because it gave the incorrect jury instruction, that request is not tethered to the D.C. Circuit's opinion in Fischer and thus would be untimely.

18

the application of the Marks rule to apply to a secondary issue that was not even fully briefed or decided below.

Fischer does not provide a controlling definition of "corruptly" that this Court would be required to use in a new trial. Hence, granting Sheppard's request for leave to file a motion for a new trial on that basis would be futile as there is no likelihood of success on the merits of the motion for a new trial.[13] The Court will therefore deny the motion for leave to file a motion for a new trial and set a date for sentencing in this case.

\* \* \*

For the foregoing reasons, and upon consideration of [100] defendant's motion for leave to file a motion for a new trial, and the entire record herein, it is hereby

**ORDERED** that [100] defendant's motion for leave to file a motion for a new trial is **DENIED**; and it is further

**ORDERED** that a sentencing hearing in this case is scheduled for September 5, 2023 at 9:00 a.m. in Courtroom 30.

**SO ORDERED.**

---

[13] Sheppard's supplement also raises an issue of vagueness, arguing that "the fractured Fischer decision makes clear that § 1512(c)(2) is unconstitutionally vague as applied to Mr. Sheppard," because "three appellate judges, after briefing and argument and months of consideration are unable to reach agreement on what conduct with what requisite intent is prohibited by § 1512(c)(2)." Def. Suppl. at 12. But "[w]hile there was no consensus as to the exact definition of the term, neither [Judge Pan or Judge Walker] evinced any belief that § 1512(c)(2) was unconstitutionally vague." United States v. Mock, Crim. A. No. 21-444 (JEB), 2023 WL 3844604, at *4 (D.D.C. June 6, 2023). And "[w]hile the lead opinion and concurring opinion in Fischer were at odds regarding the precise bounds of the corrupt mens rea, both agreed that the 'corruptly' requirement applies beyond just a defendant personally benefiting and that an indictment alleging a corrupt mens rea in the same manner as the one in this case survives a motion to dismiss." United States v. Munchel, Case No. 1:21-CR-118-RCL, 2023 WL 2992689, at *5 (D.D.C. Apr. 18, 2023) (rejecting vagueness challenge based on Fischer decision). Thus, the Fischer decision does not change the Court's conclusion that § 1512(c)(2) is not unconstitutionally vague. See United States v. McHugh, 583 F. Supp. 3d 1, 19–23 (D.D.C. 2022).

                                      /s/
                                JOHN D. BATES
                        United States District Judge

Dated: August 2, 2023