**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-203 (JDB)** |
| | ) | |
| **ALEXANDER SHEPPARD,** | ) | |
| | ) | |
| **Appellant.** | ) | |
| | ) | |

**<u>DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL</u>**

Alexander Sheppard respectfully moves this Court, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) for a motion for release pending appeal, and for stay of execution of his sentence under Federal Rule of Criminal Procedure 38. Mr. Sheppard's request for release is based on two of the claims to be raised on appeal, (1) that in light of *United States v. Thomas Robertson*, the evidence at Mr. Sheppard's trial was insufficient to sustain a conviction on 18 U.S.C. § 1512(c)(2), and (2) that this Court's jury instruction defining the word "corruptly" as used in 18 U.S.C. § 1512(c)(2) was erroneous, warranting a new trial.

The Court need not resolve the merits of Mr. Sheppard's claim to release him pending his appeal. This Court need only find that his appellate claim raises a "substantial question of law," that, if decided in his favor would likely result in a new trial or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. Mr. Sheppard respectfully submits that the appeal does raise such a question for the reasons stated below.

Mr. Sheppard must report to serve his sentence on November 2, 2023. He requests that, at a minimum, this reporting be stayed during the consideration of this motion.

1

## Background

On January 6, 2021, twenty-one year old Alex Sheppard, attended a rally to which he was invited by former President Trump, where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right." *See* Sheppard Sentencing Memorandum, ECF No. 98.

Mr. Sheppard traveled from Ohio to Washington, D.C. the night of January 5, 2021. On the way to D.C., Mr. Sheppard messaged his friend saying that he was "on his way to D.C. to protest the election." *See* Trial Transcript, Day 4 at 49. Mr. Sheppard also recorded a video of himself proclaiming his intentions to protest what he believed was a fraudulent election. *Id*. at 49-50, 77. (*see* gov. admitted exhibit 321). On January 6, 2021, Mr. Sheppard attended the "Stop the Steal Rally," where he heard the former President Donald Trump tell the crowd that they needed to go down to the Capitol building to protest in order to encourage Mike Pence and Senators to vote to send back the votes to the states. *Id*. at 79-81 (*see* def. admitted exhibit 1). Prior to this speech, Mr. Sheppard had no intention of entering the Capitol building. He traveled alone and was not part of any organized group. Wearing a blue hooded sweatshirt, a backpack with granola bars and water, and a red "Make America Great Again" hat, Mr. Sheppard walked to the Capitol Building with the crowd after Donald Trump's speech. *See* Trial Transcript, Day 3 at 191. Mr. Sheppard then walked through an open door and entered the Capitol building. *See* Trial Transcript, Day 4 at 86-69.

On February 22, 2021, Mr. Sheppard was charged via complaint with one count of Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), in addition to five misdemeanor trespass and disorderly conduct offenses for his participation in the events on

January 6, 2021. The government obtained an indictment for the same charges on March 12, 2021.

Before jury selection, Mr. Sheppard submitted a proposed and revised jury instruction for the definition of the required element of "corruptly" in 18 USC § 1512(c):

> An act is done "corruptly" if it is done voluntarily, intentionally, and dishonestly, either to bring about an unlawful result or a lawful result by some unlawful method, with a hope or expectation or other financial gain or to obtain an unlawful benefit for himself or an associate. The defendant must also act with "consciousness of wrongdoing," which means an understanding or awareness that what the person is doing is wrong or unlawful.
>
> Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but he does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.

Additional Defense Proposed Jury Instructions [ECF No. 73] at 3. Instead, the court adopted the Government's proposed jury instruction in instructing the jury that [t]o act "corruptly," a defendant must use unlawful means or act with an unlawful purpose, or both. He must also act with "consciousness of wrongdoing," which means with an understanding or awareness that what the person is doing is wrong. *See* Final Jury Instructions at 28. The court also adopted the unopposed second explanation paragraph described above. *Id*.

On January 26, 2023, Mr. Sheppard was convicted of Obstruction of an Official Proceeding in violation of 18 USC § 1512(c)(2) and four of the five misdemeanor violations. On September 5, 2023, Mr. Sheppard was sentenced to 19 months of imprisonment for Obstruction of an Official Proceeding and no more than 12 months for any of the misdemeanor offenses, all to be served concurrently. *See* Judgment of Conviction, ECF No. 108. Mr. Sheppard was permitted to self-surrender. He is currently scheduled to report to serve his sentence on November 2, 2023.

**Argument**

Under 18 U.S.C. § 3143(b)(1), a court shall order release pending appeal if it finds:

(A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

    (i)     reversal,

    (ii)    an order for a new trial,

    (iii)   a sentence that does not include a term of imprisonment, or

    (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . ." *Id*. After determining that a defendant is neither a flight risk nor a danger to the community, courts use a two step-inquiry to determine whether to release that defendant pending appeal under § 3143(b)(1): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to [one of the options enumerated in § 3143(b)(1)(B)(i)–(iv)]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a close question or one that very well could be decided the other way." *Id*. (internal quotation marks omitted).

Mr. Sheppard does not pose a flight risk or danger to the community by virtue of his near complete compliance over the last two years with his pretrial release conditions, his repeated appearances at court, and his remorse for the actions he took on January 6th, 2021. Mr. Sheppard submits that his appeal is not for the purposes of delay.

The first substantial question of law and most imminently consequential is the recent ruling in *United States v. Robertson*, No. 22-3062 (D.C. Cir. October 20, 2023). For reasons

discussed below, *Robertson* makes clear that the evidence at Mr. Sheppard's trial was not sufficient to sustain a conviction for Obstruction of an Official Proceeding because there was no evidence that Mr. Sheppard used "independently felonious means" to obstruct the vote.

In addition, Mr. Sheppard's claim on appeal that the jury instruction on the "corruptly" *mens rea* element of 18 U.S.C. § 1512(c)(2) was erroneous is another substantial question because judges on both the United States Court of Appeals for the District of Columbia Circuit and this Court have ruled differently on this precise question, it is a question that is currently the subject of ongoing appeals, and in light of *United States v. Fischer*, it is likely that the Court of Appeals and potentially the Supreme Court will rule in favor of the definition of "corruptly" proposed by Mr. Sheppard.[1]

Lastly, if Mr. Sheppard's claims are decided in his favor, the remedy will be to reverse his felony conviction, and at a minimum, to grant a new trial for his conviction under 18 U.S.C. § 1512(c)(2).  In either instance, his appeal will likely result in a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.

## I.     Mr. Sheppard Does Not Pose a Flight Risk or Danger to the Community.

Mr. Sheppard has demonstrated by clear and convincing evidence that he will not flee or pose a danger to the community by virtue of his overall compliance with the pretrial release conditions that have been in place since the outset of this case. "Under 18 U.S.C.A. § 3143(b) (1985), the defendant must show 'by clear and convincing evidence' that he or she 'is not likely to flee or pose a danger to the safety of any other person or the community if released. . . .'" *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985)) (quoting § 3143(b) (1)).

---

[1] Now that Donald Trump has been charged with 18 U.S.C. § 1512(c)(2), the chances of the Supreme Court granting certiorari are greater.

As the Court is aware, Mr. Sheppard lives outside Columbus, Ohio, where he lives with his older brother and works full time at a sports bar and is being monitored by the Pretrial Services Office in the Southern District of Ohio. At this time, Mr. Sheppard remains in compliance with his conditions of release.

Mr. Sheppard is remorseful for being involved in what was a very tragic day for this country. Even testifying in his own trial, Mr. Sheppard acknowledged his behavior. He testified multiple times that he regretted going into the Capitol building and that his actions were stupid, foolish, and inappropriate. *See* Trial Transcript, Day 4 at 105, 117, 207, 211.

Mr. Sheppard's family and friends all agree that this event is not representative of his true character. They all paint him in a positive light and describe him as being "polite," respectful, "kind," "professional," and "courteous," and having a strong work ethic. *See* Defense Sentencing Memorandum, Exhibit 1, Letters of Support. His family and friends all mention how Mr. Sheppard has expressed remorse to them for his actions on January 6, 2021. *Id*.

Mr. Sheppard's employer also took the time to write a letter to the Court to explain that he has a positive work ethic and consistently goes above and beyond, that he has expressed remorse for his offense, and that he is welcome back as an employee. *Id. See* Letter from Brittiney Johnson.

Lastly, on January 6, 2021, Mr. Sheppard traveled alone, did not have any leadership role had no prior intent to enter the Capitol building, and did not assault anyone or destroy any property. Mr. Sheppard was cooperative with the investigation and has attended all of his pre-trial court hearings with courteousness. Even at trial when confronted by mocking and aggressive behavior from the government during its cross-examination, Mr. Sheppard was polite and calm.

Based on the past two years, the Court can be assured that Mr. Sheppard is unlikely to repeat the same conduct. Besides an arrest for a traffic offense that is now resolved, Mr. Sheppard has been compliant with his conditions of release. Ever since January 6, 2021, Mr. Sheppard has been a productive member of society and has been working full-time. He also has zero criminal history and is unlikely to recidivate.

Mr. Sheppard, by virtue of his compliance with his conditions of release, steady full-time employment, family support, and lack of any violent action both on January 6th and since, has demonstrated by clear and convincing evidence that he does not pose a flight risk or danger to the community.

## II.    Mr. Sheppard Raises on Appeal "Substantial Questions" of Whether the Evidence Was Sufficient to Sustain His Conviction under 18 U.S.C. § 1512(c)(2) and Whether the Jury Instruction on the "Corruptly" Mens Rea Element of 18 U.S.C. § 1512(c)(2) Was Erroneous.

Mr. Sheppard submits that because this appeal is not for purposes of delay and because he presents no issue of dangerousness or potential flight, the only question is whether his appeal raises a substantial question of law that, if decided in his favor, would be likely to result in a new trial, or a term of imprisonment that is less than the expected duration of the appeal process.

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam) (quoting *Bayko*, 774 F.2d at 523). This standard does not require that the Court find that Mr. Sheppard's appeal establishes a likelihood of reversal before it may grant him release pending appeal. *See Bayko*, 774 F.2d at 522-23. Rather, the Court must "evaluate the difficulty of the question" on appeal and grant release pending appeal if it determines that the question is a close one or one that "very well could be" decided in the defendant's favor. *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986).

7

A. **The Circuit Court of Appeals, in *Robertson*, made it clear that the evidence at Mr. Sheppard's trial was insufficient to sustain a conviction for Obstruction of an Official Proceeding.**

The evidence at Mr. Sheppard's trial was not sufficient to sustain a conviction under 18 U.S.C. § 1512(c)(2) because central to sustaining the defendant's conviction for the same offense in *Roberston*, was the Court of Appeals' finding that the defendant engaged in "independently felonious means, " and Mr. Sheppard clearly did not engage in such "independently felonious means." *United States v. Robertson*, No. 22-3062, 2023 U.S. App. LEXIS 27878, 14-15 (D.C. Cir. 2023). *Robertson* held that under the factual circumstances of that case, defendants who obstruct Congress by "independently *felonious* means" act corruptly. *See Id*. at 27. (Emphasis added). The Court ruled that the jury instruction conveyed this meaning, but more significantly, ruled that the evidence against Robertson was sufficient because in addition to obstructing an official proceeding, Robertson was also convicted of feloniously "knowingly entering a restricted building when the Vice President was there, while carrying a deadly and dangerous weapon ([a] large wooden stick), in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); knowingly impeding the orderly conduct of government business, while carrying a deadly and dangerous weapon (the large wooden stick), in violation of 18 U.S.C. § 1752(a)(2); altering, destroying, mutilating, or concealing cell phones with intent to impair their use in an ensuing investigation in violation of 18 U.S.C. § 1512(c)(1)", and Civil Disorder in violation of 18 U.S.C. §231(a)(3). *Id*. at 7-8.

*Robertson*, explicitly left open the question posed by Mr. Sheppard: whether 18 U.S.C. § 1512(c) (2) applies at all "to defendants who obstruct Congress by means of only 'minor advocacy, lobbying, and protest offenses.'" *Id*. at 30-31 (quoting *Fischer*, 64 F.4th at 380 (Katsas, J., dissenting)). In fact, while responding to Judge Henderson's position that defining "corruptly" to include independent unlawful conduct would "supercharge" minor crimes, the majority in *Robertson* explicitly stated that "prosecutions seeking to demonstrate that a defendant

"corruptly" obstructed a proceeding by relying on proof that the defendant's means were misdemeanors or otherwise unlawful . . . should be addressed when they arise." *Id*. at 53. Mr. Sheppard's case has arisen. Mr. Sheppard committed no independent felonies. Aside from his obstruction conviction, he was found guilty of only misdemeanors.

The fact that *Robertson* purposefully left open Mr. Sheppard's very question and essentially invited defendants like him to pursue its resolution on appeal, clearly demonstrates that the question is substantial.

**B.  The jury instruction the District Court provided defining "corruptly" under 18 U.S.C. § 1512(c)(2) was erroneous and presents another substantial question of law.**

Mr. Sheppard also intends to challenge whether the jury instruction the District Court provided defining the element of "corruptly" in 18 U.S.C. § 1512(c)(2) should have included a requirement that the jury find that to act "corruptly," the defendant must have sought an unlawful benefit for himself or an associate. Indeed, judges on both the Court of Appeals and the District Court have ruled differently on the legal question of what conduct satisfies the statutory elements of 18 U.S.C. § 1512 (c)(2) requires,  and the Court of Appeals very well could rule in favor of the definition of "corruptly" proposed by Mr. Sheppard.

The Court of Appeals in two cases now, has considered the proper definition of the "corruptly" *mens rea* element in 18 U.S.C. § 1512(c), but has left open whether the correct definition was used as applied to the facts of Mr. Sheppard's case. *See United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023); *United States v. Robertson*, No. 22-3062, 2023 U.S. App. LEXIS 27878, 14-15 (D.C. Cir. 2023).

In *Fischer*, the court explicitly left undefined the "exact contours of corrupt intent [required to be proven in 18 U.S.C. § 1512(c)] for another day." *Fischer*, 64 F.4th at 340

(internal quotations omitted). In its ruling, the three-judge panel came to three different conclusions about the correct meaning of "corruptly." *See id*. at 341. Judge Pan, writing the lead opinion, advanced three possible definitions of "corruptly," the third of which, "requir[ing] proof that the defendant acted with an intent to procure an unlawful benefit either for himself or for some other person" is substantively identical to the definition advanced by Mr. Sheppard. *Id*. at 340. Judge Pan refused to endorse this specific definition because, according to her opinion, the defendant in that case would satisfy the required intent element under any of those three definitions and she would prefer to define "corruptly" in a case with more in-depth briefing on the matter. *See id*. at 340-41. Conversely, in his concurring opinion, Judge Walker explicitly held that this third definition was the only one he supported in order to avoid giving the statute too "breathtaking" of a scope. *See id*. at 351-52 (Walker, J., concurring). Lastly, while Judge Katsas, like Judge Pan, refused to rule on a precise definition of "corruptly" in his dissent, he did express concern that any of the three proposed definitions would leave the statute overly vague, given what he believed was too broad of an actus reus element. *See id*. at 379-81 (Katsas, J., dissenting).

Unfortunately, *Robertson* does not settle whether "corruptly" must include "an intent to procure an unlawful benefit either for himself or for some other person." Although supposedly on point, *Robertson* was an appeal on a sufficiency of the evidence claim. *Robertson*, No. 22-3062, 2023 U.S. App. LEXIS 27878, at 15. Given the specific facts of the case, the Court found that the Robertson jury instruction defining "corruptly" as requiring "unlawful means or . . . an unlawful purpose, or both" was sufficient. *See id*., at 10, 11, 15. *Robertson*, like *Fischer*, maintains that in specific cases requiring an "unlawful benefit" may be sufficient to prove "corruptly," but that in *Robertson*'s case it was not necessary because Robertson's "inherently

malign" actions sufficed. *See id*. at 22-23. The *Robertson* court made clear, however, that it was making only a "limited inquiry" because "the claim on appeal challeng[ed] only the sufficiency of the evidence." *Id*. at 26

Mr. Sheppard will raise a question on appeal contemplated in both *Fischer* and *Robertson*, yet explicitly left open. Given that both *Fischer* and *Robertson* acknowledge that requiring an "unlawful benefit" may, in specific cases, be necessary to prove "corruptly," and Mr. Sheppard presents just such a scenario, he has presented a substantial question of law.

It bears noting that the defendants in *Fischer* petitioned the Supreme Court of the United States for a writ of certiorari. The Supreme Court recognized the petition for a writ of certiorari and stayed the Appellate Court's mandate on September 25th, 2023. *Fischer*, 64 F.4th 329. These developments further suggest the substantiality of the issue Mr. Sheppard is pursuing on appeal.

Finally, this Court has acknowledged that the proper definition of "corruptly" may raise a substantial question. In *United States v. Brock*, this Court noted that the question of the definition of "corruptly" discussed in *Fischer* "is not an entirely frivolous one." *See United States v. Brock*, Criminal Action No. 21-140 (JDB), ECF 107, 7. Although this Court denied Brock's motion for release pending appeal because Brock failed to show that the question, if decided in his favor, would "likely lead to a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," this Court nevertheless indicated that the question itself is likely substantial in nature. *See id*. at 8.

Given the divided ruling in *Fischer*, *Robertson*'s narrow ruling limited to its facts, the ongoing litigation, and this Court's own rulings about the very question, the question of how to

properly define § 1512(c)(2) for a jury presents a substantial question of law under 18 U.S.C. § 3143(b) (1985). This Court, however, need not agree with these arguments, or with Judge Walker, or Judge Henderson in order to find that Mr. Sheppard raises a substantial question on appeal. Rather, the Court must "evaluate the difficulty of the question" on appeal, *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986), and grant release pending appeal if it determines that the question is a close one or one that "very well could be" decided in the defendant's favor. Mr. Sheppard has met this standard.

### III.   The Substantial Questions Mr. Sheppard Has Raised Are Likely to Result in a New Trial Or a Reduced Sentence to a Term of Imprisonment Less Than the Expected Duration of the Appeal Process.

Based on *Robertson*, the Court of Appeals very well could find that the evidence was insufficient to sustain Mr. Sheppard's only felony conviction. If so, reversal of his § 1512(c)(2) conviction will result in, at a minimum, a reduced sentence for him. This is because Mr. Sheppard was sentenced to 19 months' imprisonment for his conviction under § 1512(c)(2) – his sole felony offense. He received concurrent sentences of 12 months' imprisonment for the misdemeanors of which he was convicted. Mr. Sheppard would be entitled to a resentencing where there is every reason to believe the misdemeanor sentences would be lower when not driven by the felony conviction and the U.S.S.G. § 2J1.2 sentencing guidelines. In fact, this Court has routinely sentenced similarly situated January 6 defendants convicted only of misdemeanors to far less than 12 months. Some of the conduct of prior misdemeanants is comparable and at times even more egregious than Mr. Sheppard's conduct. Mr. Sheppard's conduct did not appear to be more aggravating than the *John Nassif* case where the defendant was convicted after a jury trial and sentenced to 7 months' incarceration, the *David Ticas* case where this Court sentenced the defendant to 14 days' incarceration, the *John Lolos* case, where

the defendant was sentenced to 14 days' incarceration, the *Phillip Bromley* case, where the defendant was sentenced to 90 days' incarceration, and many others. *See United States v. John Nassif*, 21-cr-421 (JDB); *United States v. David Ticas*, 21-cr-601 (JDB) (sentencing to 14 days' incarceration for misdemeanor conduct including yelling at officers and asking for the whereabouts of Democratic congress people); *United States v. John Lolos,* 21-cr-243 (APM) (sentencing to 14 days' incarceration for misdemeanor conduct including making troubling statements and posts while inside the Capitol building, remaining there for 43 minutes, and disrupting his flight home causing the plane to turn around); *United States v. Phillip Bromley,* 21-cr-250 (PLF) (sentencing to 90 days' incarceration for misdemeanor conduct involving allegedly berating officers guarding the Capitol building doors while his cousin assaulted one of them, penetrating deep enough to witness the shooting of Ashli Babbit, and allegedly lying about his conduct). *See*, *e.g. United States v. Jeremiah Caplinger,* 21-cr-342 (PLF) (sentencing to 35 days' incarceration for misdemeanor conduct involving bringing body armor to the Capital building, scaling a wall, pushing past officers to get to Nancy Pelosi's office, and demonstrating a lack of remorse); *United States v. Jacob Wiedrich,* 21-cr-581 (TFH) (sentencing to 90 days' home detention for misdemeanor conduct involving overcoming officer resistance on way into the Capitol building and stealing a US flag from the Capitol building); *United States v. David Mish,* 21-cr-112 (CJN) (sentencing to 30 days' incarceration for misdemeanor conduct involving penetrating deep enough into the Capitol building to witness Ashli Babbit's shooting, despite a long criminal history); *United States v. William Tryon,* 21-cr-420 (RBW) (sentencing to 50 days' incarceration for misdemeanor conduct involving overcoming officer resistance and pepper-

spray to enter the Capitol building ).[2] Given the comparatively lower sentences for defendants convicted of only misdemeanors, there is every reason to believe Mr. Sheppard's misdemeanor sentences would be lower without the felony conviction – especially since he has always accepted responsibility for the misdemeanors. Thus, it is likely that any new sentence Mr. Sheppard's misdemeanor charges would result in "a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process." *See* 18 U.S.C. § 3143(b)(1).[3]

Alternatively, if the question of whether this Court properly instructed the jury with regard to how to define "corruptly" is decided in Mr. Sheppard's favor, he will be entitled to vacatur of that count of conviction and a new trial. This is because "[w]here the [jury] instructions are erroneous, causing grave doubts about whether the jury based its verdict on the proper construction of guilty purpose or intent, a new trial is required." *United States v. Hite*, 769 F.3d 1154, 1167 (D.C. Cir. 2014) (citation omitted)

Thus, a favorable ruling on either of the issues Mr. Sheppard intends to pursue on appeal will result in either a new trial or a sentence lower than the expected duration of the appeal

---

[2] The Court at sentencing made a point that some of these cases resulted in lower sentences because they were guilty pleas. Even still, Mr. Sheppard made it clear from the beginning that he would have pled guilty to a misdemeanor had such a plea been offered. Furthermore, the difference of pleading guilty versus conviction after a trial should still not result in a substantially more significant sentence – especially because Mr. Sheppard essentially conceded those misdemeanors in his trial testimony.

[3] Over the last 13 years, the average median time from filing a notice of appeal to disposition in the United States Court of Appeals for the District of Columbia Circuit has been 12 months. Ballotpedia, *United States Court of Appeals for the District of Columbia, Caseloads*, October 16, 2023 available at https://ballotpedia.org/United_States_Court_of_Appeals_for_the_District_of_Columbia_Circuit (last viewed on October 18, 2023).

Also, should the Supreme Court of the United States grant a writ of certiorari to *Fischer* or *Robertson,* then Mr. Sheppard's appeal process may very well take much longer than his current sentence of 19 months.

process. For these reasons, the Court should allow Mr. Sheppard to remain on release pending appeal.

## **<u>Conclusion</u>**

For these reasons and any others the Court deems just and proper, Mr. Sheppard asks that the Court grant this motion and order Mr. Sheppard's release pending resolution of his appeal. At a minimum, Mr. Sheppard requests that the Court order delay of his self-surrender date until this motion is decided.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Maria Jacob
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500
maria_jacob@fd.org