UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDER SHEPPARD,<br>Defendant. | Criminal Action No. 21-203 (JDB) |

## MEMORANDUM OPINION

On November 1, 2023, the Court issued an Order denying defendant Alexander Sheppard's motion for release pending appeal. This Memorandum Opinion explains the Court's reasoning for denying Sheppard's motion.

## Background

On January 26, 2023, a jury convicted Sheppard of one felony count and four misdemeanor counts arising from his participation in the riot at the U.S. Capitol on January 6, 2021: obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). See Judgment [ECF No. 108] at 1–2. He was acquitted of entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four). See id. at 1. On September 5, 2023, this Court sentenced Sheppard to 19 months' imprisonment on Count One, twelve months' imprisonment on each of Counts Two and Three, and six months' imprisonment on Counts Five and Six, all to run concurrently. See id. at 3.

1

Sheppard filed the instant motion for release pending appeal on October 29, 2023—four days before he was scheduled to report to prison. Mot. for Release Pending Appeal [ECF No. 116] ("Mot."). The Court ordered a response from the government due two days later, on October 31, 2023. See Gov't's Opp'n to Mot. [ECF No. 117] ("Opp'n"). Given the short timeframe before Sheppard's reporting date, the Court issued a brief Order on November 1, 2023, denying the motion and ordering Sheppard to report to prison as directed the next day. Order [ECF No. 118]. The Court indicated it would issue an opinion explaining its reasoning shortly. Id.

## Legal Standard

A court "shall order" that a defendant

who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." Id.

2

**Analysis**

I.  **Flight Risk or Danger to the Community**

As an initial matter, the parties dispute whether Sheppard has borne his burden of proving to the Court by clear and convincing evidence that he is not a flight risk or a danger to the community.  See Fed. R. Crim. P. 46(c).  Sheppard argues that he is not, as evidenced by his compliance with the terms of his release (aside from one traffic offense) and his maintenance of a job.  See Mot. at 5–7.  Sheppard also points to his family support and lack of violent action.  Id. at 6–7.  The government responds that Sheppard has failed to address the fact that, after conviction, "the incentive to flee or engage in dangerous conduct has grown."  Opp'n at 13.  The government also points to his lack of remorse (as shown by his frequent postings on social media), his false testimony at trial, and his arrest for driving under the influence while on pretrial release.  Id. at 13–14.  The Court finds that Sheppard has shown he is not a flight risk or danger to the community on release.  His general compliance with his conditions, his maintenance of a job, and his close connections with his family suggest he is unlikely to flee or reoffend while waiting on the outcome of his appeal.  This is the same judgment the Court has repeatedly made by allowing Sheppard to remain on release before trial, sentencing, and reporting to prison.

II.  **Substantial Question of Law**

Courts use a two-step inquiry to determine whether the requirements of § 3143(b)(1)(B) are satisfied: "(1) Does the appeal raise a substantial question?  (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or one of the other outcomes enumerated in § 3143(b)(1)(B)(ii)–(iv)]?"  United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam).  The D.C. Circuit has held that "a substantial question is a close question or one that very well could be decided the other way."  Id. (internal quotation marks omitted).  It is not enough for a defendant to raise a question that is merely nonfrivolous or "fairly debatable."

Id. In conducting this inquiry, the Court presumes the defendant was validly convicted. Id. at 556. "[T]he defendant bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal].'" United States v. Libby, 498 F. Supp. 2d 1, 3 (D.D.C. 2007) (alteration in original) (quoting United States v. Shoffner, 791 F.2d 586, 589 (7th Cir. 1986)).

### A. Sheppard's Challenges

Sheppard argues that his appeal will raise two substantial questions of law, both pertaining to his felony conviction under 18 U.S.C. § 1512(c)(2). That statutory provision provides, in relevant part, that "[w]hoever corruptly . . . obstructs, influences or impedes any official proceeding, or attempts to do so" shall be criminally liable. 18 U.S.C. § 1512(c)(2). The D.C. Circuit has held that § 1512(c)(2) applies to "all forms of corrupt obstruction of an official proceeding" (other than the specific acts covered by subsection (c)(1), such as altering or destroying documents). United States v. Fischer, 64 F.4th 329, 336 (D.C. Cir. 2023). The broad scope of the statute is limited by the mens rea element—the requirement that a defendant act "corruptly." See id. at 339 (opinion of Pan, J.); id. at 351–52 (Walker, J., concurring in part and concurring in the judgment). Accordingly, Sheppard challenges this Court's definition of "corruptly" and whether the evidence at trial sufficed to meet it.

At trial, the Court instructed the jury on the definition of "corruptly" in § 1512(c)(2) as follows:

> To act corruptly, a defendant must use unlawful means or act with an unlawful purpose or both. He must also act with consciousness of wrongdoing, which means with an understanding or awareness that what the person is doing is wrong.
>
> Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his constitutional privilege against self-incrimination thereby obstructing or impeding the proceeding, but he does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify

4

in that proceeding or by engaging in other independently unlawful conduct does act corruptly.

Day 5 Trial Tr. at 72:24–73:12.

Sheppard argues that the application to him of Fischer and the D.C. Circuit's recent decision in United States v. Robertson, No. 22-3062, 2023 WL 6932346 (D.C. Cir. Oct. 20, 2023), raise substantial questions on appeal. First, he argues that the evidence presented at his trial did not suffice to support his conviction under § 1512(c)(2) because he did not obstruct Congress by "independently felonious means." See Mot. at 8–9. Second, he argues that the Court erred by refusing to instruct the jury that corrupt intent requires proof that he sought to benefit himself or someone else. See id. at 9–12.

### B. United States v. Robertson

Robertson was a challenge to the sufficiency of the evidence supporting the conviction of another January 6 defendant for violating § 1512(c)(2). 2023 WL 6932346, at *1. Believing the 2020 presidential election was "rigged," Robertson posted messages on social media calling for an "open armed rebellion" and threatening to start an "insurgency." Id. On January 6, 2021, he traveled to Washington, D.C., listened to former President Trump speak, and marched to the Capitol with a large wooden stick. See id. at *2. He used the stick to hit one officer and "swipe" at another outside the Capitol, then followed a group of rioters into the breached building. Id. Once inside, Robertson took selfie photos and banged his stick on the ground with the chanting rioters. Id. When he entered the building, the House and Senate were meeting to certify the count of the 2020 presidential election, with the Vice President presiding; those individuals were forced to flee due to the mob in which Robertson took part, to resume hours later once the Capitol was secured. Id. After January 6, Robertson bragged about his participation in the riot on social media, saying among other things that he had "seen for the first time in [his] life . . . [a] government scared of its people. The pictures of them huddled in [sic] the floor crying is the most American thing I

have ever seen." Id. (second alteration in original).  After a warrant issued for his arrest, Robertson apparently destroyed his phone and the evidence therein.  Id.  He was charged—and convicted—of obstruction under § 1512(c)(2) and various other offenses.  Id. at *3–4.

On appeal, Robertson argued—as Sheppard did at trial, and intends to do again on appeal—that corruptly "describes only an act dishonestly done with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person."  Robertson, 2023 WL 6932346, at *5 (internal quotation marks omitted).  Under that interpretation, Robertson argued, the evidence was insufficient to convict him under § 1512(c)(2).  Id.

To reach Robertson's sufficiency challenge, the D.C. Circuit first considered the meaning of "corruptly."  Reviewing cases from the Supreme Court and the D.C. Circuit, the court extracted three general ways of meeting that requirement: by establishing (1) that the defendant's conduct was inherently corrupt, or that "[(2)] the defendant acted with a corrupt purpose or [(3)] via independently corrupt means."  Id. at *7; see id. at *6.  First, certain obstructive actions, such as knowingly destroying evidence in a judicial proceeding or threatening jurors, are "inherently corrupt," because there are "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding."  Id. at *6 (quoting United States v. North, 910 F.2d 843, 882 (D.C. Cir. 1990)).  Second, a corrupt purpose can be demonstrated when the evidence shows that the defendant's purpose was "depraved, evil, or wrongful."  Id. at *7 (quoting North, 910 F.2d at 942–43 (Silberman, J., concurring in part and dissenting in part)).  Third, a corrupt motive can be inferred when "an individual 'chooses the illegal or dubious course' . . . when a lawful means was available."  Id. (quoting North, 910 F.2d at 883–84).  "When a defendant uses 'independently criminal' means, the jury 'would not necessarily need to probe the morality or propriety of the defendant's purpose.'"  Id. (quoting North, 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part)).  The court in Robertson emphasized that "'corruptly' need not be proved in

6

the same way in every case," since "'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted . . . [is] limited only by the imagination of the criminally inclined.'" Id. at *8 (omission and alteration in original) (quoting United States v. Poindexter, 951 F.2d 369, 382 (D.C. Cir. 1991)).

Relying on the "independently criminal means" definition, the D.C. Circuit held that the district court "correctly instructed the jury, in relevant part, that one way to prove that a defendant acted 'corruptly' is to demonstrate that he 'obstruct[ed] or impede[d] . . . by engaging in other independently unlawful conduct." Id. at *8 (omission and alterations in original). This instruction fell "squarely within [the D.C. Circuit's] holding in North that a defendant acts 'corruptly' when he 'chooses the illegal or dubious course when other legal action' is possible." Id. (quoting North, 910 F.2d at 883).

The D.C. Circuit held that Robertson's conduct—described above—"amply supported" the conviction on the obstruction charges. Id. at *9. "[A] jury could easily find that Robertson acted 'corruptly' by using independently unlawful, felonious means with the intent to obstruct, influence, or impede the electoral-vote certification." Id. The court pointed specifically to the fact that Robertson "took action to obstruct Congress by force," which was "plainly wrongful and therefore corrupt." Id. at *10. Specifically, the court noted that "Robertson was part of a mob that sought to overturn the result of the election by force, and that he used a dangerous weapon to impede the Electoral College vote certification." Id.

### C. "Independently Felonious" Challenge

Sheppard claims that there is a substantial question as to whether the evidence at his trial was sufficient to support a guilty verdict on the felony obstruction count—18 U.S.C. § 1512(c)(2)—because the government did not offer proof that he used "independently felonious means" to obstruct Congress's certification of the electoral vote on January 6, 2021. Mot. at 8.

7

He notes—correctly—that the Robertson court recognized that it was not faced with a case in which the defendant obstructed Congress by "minor advocacy, lobbying, and protest offenses." Id. (quoting Robertson, 2023 WL 6932346, at *10). And, responding to the dissent's concern that "relying on independently unlawful means to prove 'corruptly' could inappropriately 'supercharge a range of minor advocacy, lobbying, and protest offenses into 20-year felonies,'" Robertson, 2023 WL 6932346, at *17 (quoting id. at *31 (Henderson, J., dissenting)), the court in Robertson noted that prosecutions "relying on proof that the defendant's means were misdemeanors or otherwise unlawful" were not immediately before the court and "should be addressed when they arise," id. However, the D.C. Circuit's recognition that certain factual scenarios have not yet been presented does not suffice to meet Sheppard's burden to raise a "close question or one that very well could be decided the other way." Perholtz, 836 F.2d at 555.

       Here, the question is not particularly close. As the government argues, the "primary point" of Robertson was that "there are a range of ways to prove a defendant's corrupt intent or action." Opp'n at 7 (quoting Robertson, 2023 WL 6932346, at *5). While Robertson held only that independent felonious conduct satisfies the corrupt intent element of § 1512(c)(2), the opinion suggests a broader construction of that element. In describing how the element could be met by "independently corrupt means," the court referred to choosing an "illegal or dubious course . . . when a lawful means was available" and employing "independently criminal means." Robertson, 2023 WL 6932346, at *7 (internal quotation marks omitted). The court specifically rejected the argument that commission of a felony offense is required to show corrupt intent. See id. at *17 ("In holding that felonious means are sufficient to establish 'corrupt' behavior, we do not suggest that they are always necessary to prove the 'corruptly' element."). The reasoning of Robertson, therefore, does not support the limited scope of independently unlawful conduct—to felonies alone—that Sheppard claims it does.

8

Moreover, it is unlikely that Robertson will lead the D.C. Circuit to find the evidence insufficient to support Sheppard's conviction under § 1512(c)(2).  As a threshold matter—as in Robertson—an appellate court makes a limited inquiry on a sufficiency challenge.  The court will review the evidence "in the light most favorable to the government" with "tremendous deference to [the] jury verdict."  Id. at *5 (internal quotation marks omitted).  Therefore, by nature of the challenge, it is difficult to say that Sheppard's appeal is "likely" to result in reversal or a new trial on the felony charge.  18 U.S.C. § 3143(b)(1)(B).

On the merits, as the government argues, Sheppard has not demonstrated any substantial question as to whether the evidence supported the jury's conclusion that Sheppard obstructed Congress corruptly.  At Sheppard's trial, the government's evidence showed the following:  On January 5, 2021, Sheppard drove overnight from his home in Ohio to Washington, D.C., to hear former President Donald Trump speak and to protest the outcome of an election he believed—and continues to believe—was stolen.  See Final Presentence Investigation Report ("PSR") ¶¶ 17, 27a.  After attending Trump's speech, he marched toward the United States Capitol and through the Senate Wing Doors breached by rioters just minutes earlier.  See id. ¶¶ 18; 27c.  Although Sheppard testified that he did not recall the blaring alarms and broken glass around him, the evidence showed both were present when he entered the Capitol.  See id. ¶¶ 18, 27c–d; Day 4 Trial Tr. 89:2–13.  Once inside, Sheppard screamed and shouted at police as he joined mobs of rioters who pushed their way past police lines, finally ending up outside the Speaker's Lobby.  See PSR ¶¶ 19–20, 27e, 27h; Day 3 Trial Tr. 75:10–16.  He recorded himself on video bragging that: "[W]e just shut down Congress!  They called an emergency session, they said we're too scared, they've shut down Congress.  Let's fucking go!"  See PSR ¶ 19; see also id. ¶ 27g; Day 4 Trial Tr. 204:12–208:7.  And he recorded House members and their staff fleeing the House Chamber.  See PSR ¶ 21; Day 4 Trial Tr. 217:5–218:25.  He left the Capitol only after hearing the gunshot that killed

Ashli Babbitt. See PSR ¶¶ 21, 27h; Day 4 Trial Tr. 241:23–242:5. At trial, he acknowledged that he acted in an "angry mob fashion, inappropriate fashion, just you know, a disorderly fashion" toward police. Day 4 Trial Tr. 221:20–22; see id. 219:21–221:22; PSR ¶¶ 26, 27h. In the days after January 6, the evidence showed Sheppard posted social media threats against Vice President Mike Pence and expressed anger with the Republican senators who certified the electoral vote. See PSR ¶¶ 22, 27i; Day 4 Trial Tr. 116:7–24.

Sheppard's case is more like Robertson than it is different. Both men posted messages on social media indicating their intent to obstruct the certification of the election. Both men marched into the Capitol as "part of a mob that sought to overturn the result of the election by force." Robertson, 2023 WL 6932346, at *10. Both men made raucous noise as police officers tried to maintain order in the Capitol. And both men bragged about how their participation in the riot obstructed the lawful certification of the election. Given the similarities between Sheppard and Robertson, it is not a "close question" if the evidence was sufficient to support Sheppard's conviction.

To be sure, unlike Robertson, see id., Sheppard seeks to characterize his conduct on January 6 as "minor advocacy, lobbying, and protest offenses," Mot. at 8. While the Court does not doubt that Sheppard came to Washington, D.C., in part to exercise his First Amendment rights, his conduct was not that of a "mere protestor exercising his First Amendment right to peacefully disagree with the outcome of the presidential election." Robertson, 2023 WL 6932346, at *10. To the extent the D.C. Circuit has reservations about reading § 1512(c)(2) to criminalize peaceful protest and the like, those concerns are unlikely to extend to Sheppard.[1]

---

[1] The D.C. Circuit may also affirm Sheppard's conviction on a separate ground. This Court instructed the jury that it must find Sheppard acted with consciousness of wrongdoing. In a footnote, the Robertson court noted that "it is not apparent that 'consciousness of wrongdoing' must be proved in this context" but that "'consciousness of wrongdoing' may itself suffice to prove corrupt intent." Robertson, 2023 WL 6932346, at *9 n.5. "[T]he jury necessarily found that the evidence met that standard when it convicted [Sheppard]." Id.

### D. Requirement of a Benefit

Sheppard also fails to demonstrate any close question about whether the Court's jury instruction was incorrect for excluding his proposed language requiring proof that he "sought an unlawful benefit for himself or an associate." Mot. at 9; see id. at 3. Sheppard claims the D.C. Circuit has "left open whether the correct definition [of 'corruptly'] was used as applied to the facts of Mr. Sheppard's case," because, according to Sheppard, Robertson only held (as relevant here) that the jury instruction defining "corruptly" as requiring "unlawful means or . . . an unlawful purpose, or both" sufficed on the facts presented there. Mot. at 9. He argues that "Robertson does not settle whether 'corruptly' must include 'an intent to procure an unlawful benefit either for [the defendant] or for some other person.'" Id. at 10.

Sheppard misconstrues how Robertson applies to him. Robertson held that the district court's jury instruction—which mirrored, in relevant part, this Court's jury instruction—was correct when the prosecution sought to prove corrupt intent by independently unlawful means. Robertson, 2023 WL 6932346, at *8.[2] The court did not reach the question of what jury instruction is required when the prosecution seeks to prove corrupt intent via the defendant's corrupt purpose. Thus, Sheppard's only potentially viable argument could be that when the government seeks to prove corrupt intent by way of a corrupt purpose, it must also show that the defendant sought a benefit for himself or someone else, and a jury instruction to that effect is required. However, that question is not "substantial" after Robertson. Sheppard is correct that Judge Walker's concurrence in Fischer defined corrupt intent to require proof that the defendant acted to benefit himself or an associate. Fischer, 64 F.4th at 361–62 (Walker, J., concurring in part and concurring in the judgment). And Judge Henderson's dissenting opinion in Robertson expressed the view that Judge

---

[2] Even if the jury was only properly instructed on finding corrupt intent by "unlawful means," it would have likely sufficed. As discussed above, Sheppard's conduct tracks Robertson sufficiently that the D.C. Circuit would be likely to affirm his conviction on that basis alone.

11

Walker's interpretation is controlling. Robertson, 2023 WL 6932346, at *24 (Henderson, J., dissenting). But the majority opinion in Robertson holds that Judge Walker's concurrence is not controlling, id. at *15–18 (majority opinion), just as this Court did when it denied Sheppard's motion for a new trial on the same ground, Mem. Op. & Order [ECF No. 105] at 12–13. Indeed, the Robertson majority concluded that Judge Walker's view that evidence that the defendant sought a benefit is the exclusive method of proving corrupt intent had "no support in the statute and is contrary to precedent." Robertson, 2023 WL 6932346, at *10. While seeking benefit for oneself or another is one way to show an unlawful purpose, the majority in Robertson decided that it was not the only way to do so. Id. at *12 (concluding that "neither dishonesty nor seeking a benefit for oneself or another is necessary to demonstrate 'wrongful, immoral, depraved, or evil' [(i.e., corrupt)] behavior within the meaning of § 1512(c)"); see Opp'n at 11. Therefore, the Court finds that Sheppard does not present a "substantial question" as to whether the jury instruction should have included language about the provision of a benefit.

This Court's recognition in its order denying a motion for release pending appeal in United States v. Brock, Crim. A. No. 21-140 (JDB) (D.D.C. Apr. 20, 2023), ECF No. 107, that the question of how to define "corruptly" was "not an entirely frivolous one" after Fischer reflected a then-ongoing dispute in the D.C. Circuit about the "precedential effect, if any" of Fischer on the meaning of "corruptly." Id. at 7 (internal quotation marks omitted). While there may remain disagreement among some D.C. Circuit judges, the Robertson majority opinion resolves this issue as to Circuit law and hence precludes this Court from finding a "substantial question" now.

In any event, as the government points out, Sheppard has not shown why the evidence at his trial would be insufficient to satisfy the jury instruction he sought, and thus why reversal would be warranted. See Opp'n at 12; cf. Robertson, 2023 WL 6932346, at *5 ("assess[ing] Robertson's claim based on how a properly instructed jury would assess the evidence"). In Fischer, Judge

12

Walker concluded that the indictment could stand as "it might be enough for the Government to prove that a defendant used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump)."  64 F.4th at 361 (Walker, J., concurring in part and concurring in the judgment).  The majority in Robertson applied this analysis to the defendant there and concluded that the evidence would have sufficed under this instruction, as well.  It was enough that Robertson sought to "secure the unlawful benefit of installing the loser of the presidential election, Donald J. Trump, as its winner."  Robertson, 2023 WL 6932346, at *16.  Under the deferential standard of a sufficiency challenge, Sheppard has not raised a substantial question as to whether the same reasoning would not lead the D.C. Circuit to conclude that the evidence supported a finding that Sheppard sought to obtain an unlawful benefit for former President Trump.[3]

\*   \*   \*

Because Sheppard's motion does not raise a "substantial question of law," the motion is denied.  A separate Order issued on November 1, 2023.

/s/
JOHN D. BATES
United States District Judge

Dated: November 3, 2023

---

[3] Sheppard argues that the substantial questions of law he raises are likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  Mot. at 8; see id. at 12–15; 18 U.S.C. § 3143(b)(1)(B).  Specifically, Sheppard argues that the Court would likely sentence him to less than twelve months in prison—the median duration of a D.C. Circuit appeal—absent the felony conviction.  Mot. at 14 & n.3.  Because the Court has determined that Sheppard has not raised a substantial question of law, the Court will not reach the question of whether a sentence of less than twelve months would have been imposed without Sheppard's felony conviction.