## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 21-cr-203 (JDB)** |
| | **:** | |
| **ALEXANDER SHEPPARD,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## SECOND MOTION FOR RELEASE PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Alexander Sheppard's second motion seeking release pending appeal in light of the Supreme Court's recent decision to grant *certiorari* in *United States v. Fischer*, No. 23-5572, 2023 WL 860578 (Dec. 13, 2023) ("Motion" and ECF No. 133). Regardless of the outcome in *Fischer*, Sheppard cannot establish by clear and convincing evidence that he does not pose a risk of flight danger to the community, and Sheppard cannot show that there is any likelihood that the outcome in *Fischer* will result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Accordingly, the Defendant's motion should be denied.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The grand jury returned an indictment on March 12, 2021, charging the defendant with felony violations of 1512(c)(2), as well as five misdemeanors.  On January 26, 2023, the defendant

was convicted of five of the six counts following a jury trial.[1] Sentencing was scheduled for April 27, 2023. Minute Order Jan. 26, 2023.

On April 26, 2023, the day before the scheduled sentencing hearing, Sheppard filed a motion asking the Court to continue the hearing and to grant leave for him to file an untimely motion for a new trial. ECF No. 100. At the hearing the next day, the Court agreed to continue Sheppard's sentencing date. Minute Entry April 28, 2023. On August 2, 2023, the Court denied Sheppard's motion for leave to seek a new trial and re-scheduled sentencing for September 5, 2023. ECF No. 105 and Minute Entry Aug. 2, 2023.

On September 5, Sheppard was sentenced to the following:

**Count One – 18 U.S.C. § 1512(c)(2):** Nineteen months of incarceration to run concurrently, twenty-four (24) months of supervised release to run concurrently, and $100 special assessment;

**Counts Two and Three – 18 U.S.C. § 1752(a)(1) and (2):** Twelve months of incarceration to run concurrently, twelve (12) months of supervised release to run concurrently, and $20 special assessment; and

**Counts Five and Six – 40 U.S.C. § 5104(e)(2)(D) and (G):** Six months of incarceration to run concurrently and $10 special assessment.

*See* ECF No. 108 and 109; Minute Entry Sep. 5, 2023.

On September 19, 2023, Sheppard filed a notice of appeal. ECF No. 110. On October 2, 2023, Sheppard filed a motion to delay his self-surrender date. ECF No. 112. In that motion, Sheppard represented that his report date had been scheduled for November 2, 2023, and sought to continue his self-surrender date for an additional two months until after the New Year holiday. *Id.* at 1-2. The government opposed. ECF No. 113. On October 17, 2023, the Court denied

---

[1] The jury found Sheppard not guilty of Count Four (charging him with entering and remaining in the Rayburn Room of the House of Representatives, in violation of 18 U.S.C. § 5104(e)(2)(A)).

Sheppard's motion to delay his self-surrender date and again ordered that he report to prison as directed. ECF No. 115.

On October 29, 2023, and just prior to his November 2 self-surrender date, Sheppard filed his first Motion for Release Pending Appeal. ECF Dkt. 116. The government opposed. ECF No. 117. On November 1, 2023, the Court denied Sheppard's motion for release pending appeal, and directed him to report to prison on November 2, 2023. *Id.* On December 20, 2023, Sheppard filed the instant motion for release from custody until a decision is made regarding *Fischer*. ECF No. 133. That same day, the Court issued a minute order directing the Government to file its response on or before December 27, 2023, and for Sheppard to file his reply on or before January 2, 2024. Minute Order Dated Dec. 20, 2023.

## II.    LEGAL STANDARD

Sheppard's motion is properly construed as a motion for release pending appeal under 18 U.S.C. § 3143(b). The statute does not authorize Sheppard's release here.

Under that statute, a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1)    "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
>
> (2)    that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count. *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis

supplied). If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

## III.    ARGUMENT

Even assuming that the *Fischer* issue raises a "substantial question," Sheppard fails to make the required showing for release. Sheppard is unable to show by clear and convincing evidence that he is neither a flight risk nor a danger. "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

The government acknowledges that the Court, in deciding Sheppard's first motion for release pending trial, determined that the defendant was not a flight risk or a danger to the community at that time, ECF No. 119 at 3, and that Sheppard relies upon that determination to meet his burden in the instant motion. Motion at 3 & 6. However, now that Sheppard has begun to actually serve his sentence, rather than merely having been convicted and sentenced, the incentive to flee or engage in dangerous conduct has grown. As other judges of this Court have recognized, a defendant's risk of flight is heightened *after* he or she begins a sentence:

> Further, while [defendant's] counsel proffers that [defendant] has been fully aware of the severity of a possible sentence throughout the proceedings . . . there is a significant difference between being aware of a potential sentence and actually beginning to serve the

> sentence after it has been imposed. Indeed, incarceration in a federal
> facility is a stark contrast to [defendant's] affluent lifestyle prior to
> the commencement of this action, and the possibility of returning to
> confinement after having experienced it heightens [defendant's] risk
> of flight.

*United States v. Hite*, 76 F. Supp. 3d 33, 41–42 (D.D.C. 2014), *aff'd*, 598 F. App'x 1 (D.C. Cir.

2015) (Kollar-Kotelly, J.); *see also United States v. Slatten*, 286 F. Supp. 3d 61, 69 (D.D.C. 2017),

*aff'd*, 712 F. App'x 15 (D.C. Cir. 2018) (Lamberth, J).

    Those concerns remain particularly salient here where Sheppard repeatedly sought to delay

the imposition of sentence while also continuing to attempt to justify his conduct on January 6 and

to impugn the process by which he is being held to account for his actions that day. *See generally*

ECF Dkt. 97 and 106. He has continued to do so even up to the day he reported to prison. *See, e.g.*,

X post Nov. 2, 2023 ("It is my great honor to be held hostage as a political prisoner in these United

States of America"). While he remains entitled to hold and express his views, such statements

demonstrate Sheppard's persistent belief that his perceived political grievances justified his

criminal conduct on January 6 and would therefore justify similar conduct in the future. These

comments undermine any claim that he has demonstrated "remorse" for his actions on January 6;

indeed, as this Court has previously determined, Sheppard "has not shown any meaningful remorse

for his actions." ECF No. 115 at 2.

    Likewise, this Court previously determined, as did the U.S. Probation Department, that

Sheppard's willingness to testify falsely on multiple occasions at trial warranted an upward

adjustment for obstruction of justice. PSR ¶¶29-30. For example, Sheppard testified on direct

examination that when he recorded his celebratory video and announced that members of Congress

were scared, he was really referring to their fear of "political consequences" and not their fear of

the riotous mob that had stormed the Capitol. *Id.* Sheppard's lack of candor to the Court while on

the stand and under oath raise additional concerns about his willingness to comply with Court orders and conditions. Finally, when he was arrested in Ohio shortly before trial for operating a vehicle under the influence, Sheppard failed to acknowledge the arrest until the USPO independently learned of it. Sheppard's documented lack of candor to the Court further undermines his claim that his is neither a flight risk nor a danger to the community.

Sheppard also fails to meet the second prong of the test.  Assuming that a *Fischer*-related appeal raises a "substantial question," Sheppard cannot show that a reversal in *Fischer* (and a subsequent reversal in his case) is likely to lead to reversal, an order for a new trial, or a non-jail sentence on all counts, given that there are other counts of conviction not at issue in *Fischer*: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) [Count Two]; engaging in disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) [Count Three]; disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) [Count Five]; and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) [Count Six].

Nor does defendant show that reversal in *Fischer* is "likely" to lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," given the sentences imposed on the other counts of conviction.  Regardless of the implications of *Fischer*, the defendant was sentenced to 12 months of incarceration on Counts Two and Three, and six months of incarceration on counts Five and Six, none of which are not at issue in the *Fischer* appeal. Sheppard's conduct on January 6 amply justifies at least 19 months of incarceration. At trial, the evidence showed that Sheppard was among the first rioters to enter the Capitol building, that he joined others in overrunning multiple police lines, and that he castigated officers guarding the last door separating rioters from evacuating members of Congress

6

and their staff. PSR ¶16; ECF No. 119 at 9. He entered through a door with shattered glass windows into a room with blaring alarms and broken glass—which Sheppard testified he did not recall hearing. PSR ¶19; ECF No. 119 at 9. He was among the first rioters into the Crypt, where he encountered a police line blocking further access into the building and stood there shouting and chanting just feet from the officers while additional rioters filled the room. PSR ¶19. Once the riotous mob reached sufficient numbers, Sheppard pushed other rioters who pushed their way through the police line and so crossed into the House side of the Capitol. *Id.*; Ex. 507; 509; 518. Just past Statuary Hall, Sheppard joined rioters pressing up against yet another police line guarding the main entrance to the House Chamber, where he stood chanting and yelling at the police line while inside House members and staff sought to evacuate. PSR ¶20; Ex. 506. He bragged on video: "[W]e just shut down Congress! They called an emergency session, they said we're too scared, they've shut down Congress. Let's fucking go!!" ECF No. 119 at 9. Still not satisfied, Sheppard made his way to the doors outside of the Speaker's Lobby, where he confronted yet another police line and spent several minutes screaming at them while they guarded the evacuation of the House Chamber and left "only after hearing the gunshot that killed Ashli Babbit." ECF No. 119 at 9; PSR ¶21; Ex. 509C; 510; 511; 303. Shortly after January 6, Sheppard "posted social media threats against Vice President Mike Pence and expressed anger with the Republican senators who certified the electoral vote." ECF No. 119 at 10. Combined with the serious need for general and specific deterrence, the Court's 19-month sentence was amply justified, even were Count One to be dismissed as a result of a future decision by the Supreme Court in *Fischer*.

In fact, a reversal of the § 1512(c) conviction could increase the aggregate sentence on the remaining counts.

> [In cases] involv[ing] multicount indictments and a successful attack by a defendant
> on some but not all of the counts of conviction . . . the Government routinely argues

> that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree.

*Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).

A decision in *Fischer* is expected by June 2024, approximately eight months after Sheppard's reporting date. Therefore, the appeal will likely be resolved before Sheppard has finished serving his time on his other counts of conviction. Thus, a reversal of his Section 1512(c)(2) count would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Even if the Court believes that it is "likely" that the defendant would be resentenced to 19 months or less, the remedy is not to release the defendant now, or to stay his incarceration entirely.  Instead —and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing, not immediately. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis supplied). Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal.  *See, e.g.,* May 25, 2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's "likely reduced sentence" would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

//

//

For all these reasons, the defendant's second motion for release should be denied.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Craig E. Estes
CRAIG E. ESTES
Assistant U.S. Attorney

Dated: December 26, 2023