UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Case. No. 21-CR-203 (JDB) |
| ) | |
| **ALEXANDER SHEPPARD** ) | |
| ) | |
| **Defendant.** ) | |

### REPLY IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR RELEASE PENDING APPEAL

Alexander Sheppard, through undersigned counsel, submits the following reply to the government's response filed on December 26, 2023. Dkt. 134. There is a very serious risk that Mr. Sheppard will significantly overserve his sentence absent this Court's intervention. The government no longer contests that Mr. Sheppard's appeal raises a substantial question of law. Instead, it argues that (1) Mr. Sheppard is a flight risk—a contention this Court rejected just weeks ago; and (2) that a reversal in *Fischer* is unlikely to result in a reduced sentence lower than Mr. Sheppard's time served plus the expected duration of his appeal. Neither argument is compelling.

**I.   As this Court already concluded, Mr. Sheppard is neither a flight risk nor a danger to the community.**

Just two months ago, this Court held the following:

The Court finds that Sheppard has shown he is not a flight risk or danger to the community on release. His general compliance with his conditions, his maintenance of a job, and his close connections with his family suggest he is unlikely to flee or reoffend while waiting on

1

> the outcome of his appeal. This is the same judgment the Court has
> repeatedly made by allowing Sheppard to remain on release before
> trial, sentencing, and reporting to prison.

Dkt. 119 at 3. For all the reasons previously identified in both motions for release pending appeal, that conclusion was, and still is, correct.

The government argues that because Mr. Sheppard has since begun serving his sentence, his "incentive to flee or engage in dangerous conduct has grown." Dkt. 134 at 4. The government has that backwards. If released pending appeal, Mr. Sheppard has a good chance at not returning to federal prison or returning for only a short time on his misdemeanor convictions. There is no reason to think Mr. Sheppard would risk substantially more prison time by fleeing or engaging in dangerous conduct, *especially* now that he has experienced federal prison and understands the very real consequences of his conduct. Rather, if released pending appeal, Mr. Sheppard would have every incentive to follow court orders in order to avoid (or at least minimize) any further period of incarceration.

The two cases cited by the government present a stark contrast to Mr. Sheppard's situation. In *United States v. Hite*, 76 F. Supp. 3d 33, 41 (D.D.C. 2014), *aff'd*, 598 F. App'x 1 (D.C. Cir. 2015), the defendant faced a "lengthy sentence if he [wa]s convicted based on the strong evidence against him"—one that may "conceivably run the course of [his] natural life." Similarly, in *United States v. Slatten*, 286 F. Supp. 3d 61, 69 (D.D.C. 2017), *aff'd*, 712 F. App'x 15 (D.C. Cir. 2018), the defendant "face[d] a mandatory life sentence" on a murder charge and had stated

2

"'he would rather take a round to his face than go back to jail.'" A court's flight risk assessment of a defendant staring down a life sentence has no applicability to Mr. Sheppard's circumstances. *Cf. United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (explaining that where a crime "carr[ies] with it a relatively low penalty," that fact leans against finding a defendant a flight risk).

Having now spent time in prison, Mr. Sheppard is even more acutely aware of the consequences of fleeing or engaging in illegal conduct. If anything, that fact strengthens this Court's previous conclusion that he would not pose a flight risk or danger to the community if released pending appeal.

**II.     A favorable decision in *Fischer* is likely to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."**

As explained in his motion, Mr. Sheppard's sentence absent the obstruction count likely would be "less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). He has already served approximately eight weeks, Dkt. 118 at 1 (ordering a November 2, 2023 report date), and the average duration of an appeal in the D.C. Circuit is 11.3 months, Dkt. 133 at 10 & n.4. Even if nothing changes, Mr. Sheppard's remaining sentence on the misdemeanors would be 12 months. Dkt. 108 at 3. And, as explained in detail in his motion, without the felony conviction, Mr. Sheppard's misdemeanor sentence likely would be much lower. Dkt. 133 at 9-10 & n. 3 (explaining that, "[i]n other cases involving misdemeanor-only January 6

3

defendants, this Court has consistently imposed sentences of less than a month of incarceration or probation only."). Accordingly, Mr. Sheppard's reduced sentence would almost certainly satisfy this requirement.

Somewhat incredibly, the government first responds that even if Mr. Sheppard's §1512(c) conviction—his *only felony conviction*—is reversed, his sentence should remain nineteen months. Dkt. 134 at 6-7 ("[T]he Court's 19-month sentence was amply justified, even were Count One to be dismissed as a result of a future decision by the Supreme Court in *Fischer*."). Doing so would require this Court to resentence Mr. Sheppard's misdemeanor-only convictions to consecutive terms in order to reach an aggregate sentence over twelve months. The government completely ignores the fact that, in other misdemeanor-only January 6 cases, this Court routinely imposes very short periods of incarceration—periods that often can be measured in days, not months—if it imposes incarceration at all. Dkt. 133 at 9-10 & n.3. Notably, Mr. Sheppard essentially conceded the misdemeanors during his testimony at trial. Therefore, if *Fischer* is decided in his favor, his acceptance of responsibility for his misdemeanors make him more akin to the misdemeanants who pled guilty rather than those who proceeded to trial (e.g., *Nassif* who received a sentence of 7 months' for misdemeanor convictions post trial). Accordingly, other judges on this Court have already recognized that a reversal in *Fischer* is likely to significantly affect the ultimate sentence in cases like Mr. Sheppard's case. *See, e.g.*, Min. Order (12/28/2023), *United States v. Zink*, No. 21-cr-191-JEB ("Given that

the only felony count Defendant was convicted of was Section 1512, which will thus play a substantial role in his sentencing, the Court believes that postponing such sentencing until after the Supreme Court decides *U.S. v. Fischer* is appropriate."); Min. Order (12/22/2023), *United States v. Seitz*, No. 21-cr-279-DLF (staying sentencing pending the decision in *Fischer* in case involving Section 1512 and misdemeanor convictions).

The government next argues that Mr. Sheppard's appeal duration may be shorter than average because the Supreme Court is likely to rule in *Fischer* by the end of June 2024. Dkt. 134 at 8. First, even if that were true, it is likely Mr. Sheppard's misdemeanor-only sentence would be less than eight months (the two months he has already served plus the six months between now and June 2024). Second, Mr. Sheppard's appeal is unlikely to be resolved the moment *Fischer* comes down. There are other steps that may take significant time: waiting on the Supreme Court to issue its mandate in *Fischer*; the D.C. Circuit panel will need to evaluate the *Fischer* opinion to determine its applicability to Mr. Sheppard's case; there is the possibility of further briefing in light of *Fischer*; the D.C. Circuit will then need to issue a disposition in Mr. Sheppard's case, etc. Therefore, Mr. Sheppard's appeal will certainly not be decided the moment *Fischer* is decided and there is likely to be months of further waiting time.

Finally, the government argues that "[e]ven if the Court believes that it is 'likely' that the defendant would be resentenced to 19 months or less . . . the statute

directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing, not immediately." Dkt. 134 at 8.  As explained, however, that likely period of time has already passed—misdemeanor-only January 6 defendants often receive less time than the eight weeks Mr. Sheppard has already served.  Further, absent the obstruction count, there is little reason to distinguish Mr. Sheppard from the typical misdemeanor case.  As explained in more detail in his sentencing memorandum, Mr. Sheppard was just 21 years old on January 6, 2021.  He had no prior criminal history.  He did not have any leadership role, traveled alone, had no prior intent to enter the Capitol building, and did not assault anyone or destroy any property.  *See* Dkt. 98.

Accordingly, absent the obstruction count, Mr. Sheppard's sentence would likely resemble that of other misdemeanor-only January 6 defendants and include only a very short period of incarceration, which Mr. Sheppard has already served.  Accordingly, Mr. Sheppard should be released immediately.  If, however, the Court is unsure what sentence it might give Mr. Sheppard at a post-*Fischer* resentencing, Mr. Sheppard suggests that immediate release (or release in the near future) is still the safest option as it reduces the likelihood of over incarceration.

## Conclusion

For these reasons, Mr. Sheppard respectfully moves for release pending appeal.

Respectfully Submitted,

A. J. KRAMER

Federal Public Defender for the
District of Columbia

by:_____s/_____
Maria Jacob
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington D.C. 20004
202-208-7500